USSERY INVESTMENTS, et al., Appellants,

v.

CANON & CARPENTER, INC., et al., Appellees.

No. 01–83–00472–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 8, 1983.

Kenneth Keeling, Houston, for appellants.

W.R. Malone, Scott Bounds, Huntsville, for appellees.

Before EVANS, C.J., and DOYLE and LEVY, JJ.

## OPINION

LEVY, Justice.

Suit was initiated by the owners of lots in the Hill-'n-Dale Subdivision of Walker County to enjoin the appellants from constructing two modular homes in the subdivision. Appellants seek reversal of the trial court's temporary injunction enjoining them from further construction and ordering them to remove any structures which already had been erected, allegedly in violation of applicable deed restrictions. The restrictive covenants in question were filed of record on May 25, 1972.

The only issue thus raised on this appeal is whether the trial court, under the facts of the case, abused its discretion in granting the temporary injunction. Appellants argue that the facts are undisputed, and they contend that the trial court erred in failing

to apply the law correctly to the uncontroverted facts.

The Hill-'n-Dale Subdivision restrictions provide that all lots are devoted exclusively to residential purposes, and that no building may be erected, placed or permitted to remain on any lot other than one detached single-family dwelling. The restrictions require that the floor area of each main structure must be not less than 1,000 square feet; that all buildings must be located at designated distances from the lot lines; that no residence may be built on less than one platted lot; that no trailer, tent, shack, barn or other outbuilding may be placed or erected on a lot; that all septic tanks shall meet the approval of the County Health Officer; that no animals, livestock or poultry, except dogs, cats or other household pets, may be raised, bred or kept on any lot; that fences, other than chain-link or redwood, are prohibited; and that no signs, advertisements, billboards, or advertising structures, except standard size realtor signs may be erected or maintained on any of the lots. The restrictions further provide:

1. That all residences shall be brick or brick veneer construction;

2. That no "structure" shall be moved onto any lot, but all buildings erected on said lots shall be of new construction.

The alleged violation of the two above-quoted restrictions constitute the sole basis for the trial court's temporary injunction. The appellees contend that the modular homes being constructed by the appellants are prohibited by these restrictions because there was testimony indicating that the first quoted restriction required at least fifty percent or more of the exterior to be brick or brick veneer, and one of the appellants testified that he intended to brick only between one-fourth and one-third of the exterior; and the second quoted restriction, that no structure be moved on any lot, prohibited appellants' system of modular home construction on any of the lots in the subdivision. In response to this contention, appellants claim that the appellee never raised in the trial court the issue regarding the extent of brick or brick veneer construction, so that such issue was never decided, and could not support the trial court's judgment; and secondly, that its modular home construction method merely makes use of current state-of-the-art building techniques, and does not violate any of the restrictions.

■ The restrictive covenants instrument mistakenly provided that the restrictions, covenants, and limitations were to terminate on January 1, 1955. Appellants contend that such covenants could not have been in force, because the document in which they were filed stated that they were to expire seventeen years before they were even filed. Obviously, this typographical mistake must yield to the well-established doctrine that written contracts will be construed according to the intention of the parties, notwithstanding errors and omissions, by perusing the entire document and to this end, words, names, and phrases obviously intended may be supplied. *Eldridge v. Poirier*, 50 S.W.2d 888 (Tex.Civ.App.— Dallas 1932, er. ref). Only where a contract is first found to be ambiguous may the courts consider the parties' interpretation; where the meaning of the contract is plain and unambiguous, a party's construction is immaterial. *Sun Oil Co. (Delaware) v. Madeley*, 626 S.W.2d 726 (Tex.1981).

Moreover, the record reveals that appellants' counsel stipulated that the restrictive covenants in the landowners' deeds were in effect at all material times. The court approved the stipulation and entered it of record. On oral submission, counsel for appellant recognized the binding effect of this stipulation. Considering all the foregoing, we hold that the restrictive covenants were in effect at all material times.

The record shows that appellants are the owners of four lots in the subdivision. At the time the action was instituted, appellants were in the process of constructing two modular homes on two of the lots. The construction process itself is not in dispute; the appellants bought two modular homes from Modular Technology, Inc., and each

home was delivered to the building site in two pieces. Each module was pre-assembled and pre-built at the factory and, when bolted together, the structure contains in excess of 1,000 square feet. Pier and beam foundations were constructed on the lots, and the separate modules were then transported to the building site. Upon their arrival, the metal chassis, to which the modules were attached for transportation, were removed and the modules were anchored to their permanent concrete pier and beam foundation. After the two modules are joined together, the preassembled wiring and plumbing are to be hooked up; the interior is floated, textured, taped and painted; the heating and air conditioning systems are installed; the porch, garage, or carport is constructed; outside brick is laid; carpet is installed; driveways are constructed; and the building site is landscaped. The appellant contends that the obvious advantages of modular homes, as compared to homes built piece-by-piece at the building site, are cost savings, speed, quality control, and controlled environment during construction.

Appellees offered testimony that when the modular units were being transported to the building site, they looked indistinguishable from mobile homes or double-wide trailers. The appellants, on the other hand, argue that there is a distinct difference between modular homes and mobile homes, and they point to the manufacturer's testimony that the official inspection and approval required for such homes is entirely different. Evidence was also presented that there is a substantial difference between the type of chassis that a trailer mobile home rides on, compared to a modular home, and that a mobile home is part of the actual structure of the trailer, while a modular home is bolted down on the metal chassis only for transportation purposes, and the metal chassis is then removed at the building site.

Significant differences appear in the definitions of "mobile homes" and "modular homes" by Article 5221f, § 3, Texas Manufactured Housing Standards Act, as follows:

"Mobile home" means a structure transportable in one or more sections, which, in the traveling mode, is eight body feet or more in width or forty body feet or more in length, or when erected site, is 320 or more square feet, and which is built on a permanent chassis foundation when connected to the required utilities, and includes the plumbing, heating, air conditioning, and electrical systems contained therein.

"Modular home" means a dwelling that is manufactured in two or more modules at a location other than the home site and which is designed to be used as a residence when the modules are transported to the home site, and the modules are joined together and installed on a permanent foundation system. The term includes the plumbing, heating, air conditioning and electrical systems contained in the structure . . .

 We agree with the appellants that the restrictions prohibiting any "structure" from being brought onto a lot do not preclude the appellants' modular home construction technique. The term "structure," as used in the restrictions, clearly means a whole, pre-existing, and habitable building, and its clear purpose is to require that only newly-erected, permanent buildings be placed on the subdivision lots. Furthermore, if there be any doubt about the dedicator's real intent, we must construe the restrictive covenant strictly against the subdivider and resolve all ambiguities in favor of the free and unfettered use of the premises. *Settegast v. Foley Brothers Dry Goods Co.,* 114 Tex. 452, 270 S.W. 1014 (1925); *Brown v. Wehner, et al.,* 610 S.W.2d 168 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.). The restrictions did not require that the structure be "built in place" or otherwise indicate a prohibition against modular construction as in *Curb v. Benson,* 564 S.W.2d 432 (Tex.Civ.App.—Austin 1978, writ ref'd n.r.e.), and we, therefore, perceive no impediment to that modular home system of erecting a new structure on the premises. In *Mathis v. Wallace,* 553 S.W.2d 236 (Tex.Civ.App.—

Austin 1977, no writ), the restrictive covenant provided that no building or structure shall be moved upon the premises. The court held this covenant was not violated by having a house partially pre-assembled off the premises, then cut in half, and each half being moved separately and set down on previously constructed concrete foundation piers. In the case at bar, there is even more reason than in *Mathis* to conclude that the modular homes were not prohibited "structures." Here the separate elements were never joined together to form a structure until they were permanently anchored to the foundation at the building site. Until all of the component elements comprising the basic structure were actually assembled, the unit could not be considered a "structure" within the meaning of the restrictive covenant. Moreover, as stated above, any ambiguity regarding the meaning of the term must be resolved in favor of the grantee-owner of the premises.

The appellants strenuously argue that the issue concerning the extent of brick or brick veneer to be used on the exterior of the building was never raised until time of trial. We agree with appellants that the appellees' pleadings are general in nature and do not adequately give notice that such issue will be asserted. The testimony relied upon by the appellees was that of a home builder in the subdivision. He testified that when he saw a restrictive covenant requiring that a home be brick or brick veneer, it meant to him that at least 50% or more of the exterior had to be constructed of such material. Although the witness's testimony was not contradicted, there was no evidence indicating how many of the other homes in the subdivision were constructed of brick or brick veneer, as distinguished from wooden frame or other materials. The record was not adequately developed on this point, and we conclude that the judgment cannot be upheld solely on the basis of the witness's conjecture as to how he construed the meaning of the restrictive covenant.

We accordingly reverse the trial court's judgment, dissolve the temporary injunction, and remand the cause, without prejudice to further proceedings to determine whether the restriction requiring brick or brick veneer construction would be violated by the appellants' proposed construction on the two lots in question. Rule 434, Texas Rules of Civil Procedure.