# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00371-CV

**Johnie Jennings, Appellant**

**v.**

**Carolyn Bindseil, Dan Bindseil, Jannalyn Welch, Julian Welch, Allen Knodel, Betty Knodel, Dale A. Friesenhahn, Horacio Ayala, Richard Aramendia, Daryl Payne, Melinda Payne, Deanna S. Wilson, Rodney Wilson, D.M. Stuller, William Hall, Clyde Marbach, Kurt Menking, Katherine Swoboda, Don Wallace, and Charles Wittler, Appellees**

## FROM THE DISTRICT COURT OF COMAL COUNTY, 207TH JUDICIAL DISTRICT NO. C2005-0149B, HONORABLE JACK H. ROBISON, JUDGE PRESIDING

## O P I N I O N

Johnie Jennings appeals from a summary judgment granted in favor of a coalition of landowners on Bindseil Lane in Comal County, Texas.[1] The Bindseil Landowners brought suit against Jennings under the Texas Declaratory Judgment Act (TDJA) and the Texas Property Code, seeking a declaratory judgment that a certain structure placed by Jennings on his property violated a deed restriction prohibiting mobile homes on the property. The Bindseil Landowners further sought a declaratory judgment that Jennings had proper notice that his act of placing the structure on his property would violate the deed restriction. The trial court granted the Bindseil Landowners' motion for summary judgment on their requests for declaratory relief. The trial court also granted

---

[1] For convenience, we will refer to the appellees collectively as the Bindseil Landowners.

the Bindseil Landowners' request for a permanent injunction, preventing Jennings from maintaining the structure on his property and requiring that he remove the structure and all associated equipment. Because we hold that a question of fact exists regarding whether the deed restriction prohibits the type of structure Jennings placed on his property, we reverse the trial court's order and remand the case for trial.

## BACKGROUND

In 1999, Jennings purchased 2.25 acres in rural Comal County from Allen and Betty Knodel. In 2004, Jennings purchased a modular home, also referred to as industrialized housing, for assembly on the property.[2] When Jennings's home was delivered to his property on

---

[2] Because this case revolves around the applicability of certain terminology to describe various types of housing, we will use the terms "modular home" and "industrialized housing" interchangeably to refer to the type of structure defined in § 1202.002(a) of the Texas Occupations Code. We will use the term "manufactured housing" to refer to the type of structure defined in § 1201.003(9) of the Texas Occupations Code.

Industrialized housing is governed by chapter 1202 of the Texas Occupations Code, while manufactured housing is governed by chapter 1201. "Industrialized housing" is defined as:

[A] residential structure that is:

(1) designed for the occupancy of one or more families;

(2) constructed in one or more modules or constructed using one or more modular components built at a location other than the permanent site; and

(3) designed to be used as a permanent residential structure when the module or the modular component is transported to the permanent site and erected or installed on a permanent foundation system.

Tex. Occ. Code Ann. § 1202.002(a) (West 2004).

2

December 22, 2004, a neighboring landowner objected to the delivery, claiming that the structure violated a deed restriction against mobile homes that was applicable to Jennings's property.

The deed restriction at issue was written by Dan Bindseil in 1978 and states:

> No mobile home or homes or temporary houses or residences shall be placed upon or remain upon the property conveyed hereby, nor shall such property be used for the purposes of a tourist park, trailer court, mobile home park or community, nor for an overnight camping or trailer facility.

---

"Manufactured housing" is defined as "a HUD-code manufactured home or a mobile home." Tex. Occ. Code Ann. § 1201.003(15) (West 2004 & Supp. 2007). According to § 1201.003(9) of the Texas Occupations Code:

"HUD-code manufactured home":

(A) means a structure:

(i) constructed on or after June 15, 1976, according to the rules of the United States Department of Housing and Urban Development;

(ii) built on a permanent chassis;

(iii) designed for use as a dwelling with or without a permanent foundation when the structure is connected to the required utilities;

(iv) transportable in one or more sections; and

(v) in the traveling mode, at least eight body feet in width or at least 40 body feet in length or, when erected on site, at least 320 square feet;

(B) includes the plumbing, heating, air conditioning, and electrical systems of the home; and

(C) does not include a recreational vehicle as defined by 24 C.F.R. Section 3282.8(g).

Tex. Occ. Code Ann. § 1201.003(9) (West 2004 & Supp. 2007).

The statutory definition of "mobile home" is essentially identical to that of a "HUD-code manufactured home" except that a mobile home is a structure constructed *before* June 15, 1976 and is not required to meet HUD requirements. *See* Tex. Occ. Code Ann. § 1201.003(17) (West 2004 & Supp. 2007).

3

Jennings concedes that the deed restriction applies to his property and that he had notice of the restriction when he purchased the property. However, Jennings argues that after researching modular homes and contacting the state agency responsible for regulating modular homes, he came to the conclusion that a modular home would not violate the deed restriction against mobile homes.

Jennings's home was delivered in the form of two factory-constructed modular units mounted on a flat-bed truck and driven onto the property. The units were then connected on site and attached to the property on a permanent concrete foundation. The home required extensive on-site finish work, including completion of the roof and installation of dormers. The house plans for the home call for front and back porches and a carport to be installed, but the porches and carport were not completed, due to the injunction resulting from this litigation, which prohibited any further work on the home.

On February 14, 2005, the Bindseil Landowners filed suit against Jennings to enforce the deed restriction against mobile homes. Jennings counter-claimed, requesting a declaratory judgment that his home was not subject to the restriction. The parties filed cross motions for summary judgment, and the trial court granted the Bindseil Landowners' motion, declaring that the deed restriction prohibits modular homes, that Jennings's home was in violation of the deed restriction, and that Jennings was on notice that his acts were in violation of the restriction. The court also granted a permanent injunction, prohibiting Jennings from maintaining the home and requiring him to remove it from the property within 30 days. The trial court denied the Bindseil Landowners' request to impose statutory penalties but granted their request for attorney's fees. Jennings's traditional and no-evidence motions for summary judgment were denied.

4

Jennings argues on appeal that the deed restriction does not apply to his modular home. In the alternative, he argues that the deed restriction is ambiguous and that fact questions exist regarding whether the deed restriction applies to his home and whether he was on notice that his home violated the deed restriction. He further argues that the Bindseil Landowners are not entitled to injunctive relief because they failed to conclusively establish that they would be harmed by the presence of a modular home on his property.

## STANDARD OF REVIEW

Summary judgments are reviewed de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When, as here, both parties move for summary judgment on the same issues, and the trial court grants one motion and denies the other, the appellate court considers the summary-judgment evidence presented by both sides, determines all questions presented, and if the reviewing court finds that the trial court erred, renders the judgment the trial court should have rendered. *Id*.

The Bindseil Landowners filed a traditional motion for summary judgment and Jennings filed both traditional and no-evidence motions for summary judgment. To prevail on a traditional motion for summary judgment, the movant must show that there is no issue of material fact and that it is entitled to judgment as a matter of law. *TX Far West, Ltd. v. Texas Invs. Mgmt., Inc.*, 127 S.W.3d 295, 301 (Tex. App.—Austin 2004, no pet.). Evidence favorable to the non-movant is taken as true and every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *Id*.

A no-evidence motion for summary judgment must be granted if the moving party asserts that there is no evidence of one or more essential elements of a claim or defense on which

the non-movant would have the burden of proof at trial, and the nonmovant fails to produce more than a scintilla of summary-judgment evidence raising a genuine issue of material fact on those elements. Tex. R. Civ. P. 166a(i); *Cox Texas Newspapers, L.P. v. Penick*, 219 S.W.3d 425, 432-33 (Tex. App.—Austin 2007, pet. denied).

We review a trial court's grant of injunctive relief for an abuse of discretion. *Operation Rescue-Nat'l v. Planned Parenthood*, 975 S.W.2d 546, 560 (Tex. 1998). An abuse of discretion occurs when a trial court acts in an unreasonable or arbitrary manner, or without reference to guiding rules or principles. *Holubec v. Brandenberger*, 214 S.W.3d 650, 657 (Tex. App.—Austin 2006, no pet.).

## DISCUSSION

### Deed Restrictions

Covenants restricting the free use of land are not favored by the courts, but will be enforced if they are clearly worded and confined to a lawful purpose. *Wilmoth v. Wilcox*, 734 S.W.2d 656, 657 (Tex. 1987). When the language of a restrictive covenant is unambiguous, the Texas Property Code requires that the restrictive covenant be liberally construed to give effect to its purpose and intent. Tex. Prop. Code Ann. § 202.003(a) (West 2007). However, if the language is found to be ambiguous, the restrictive covenant is construed strictly against the party seeking to enforce the restriction, and all doubts must be resolved in favor of the free and unrestricted use of the property. *Wilmoth*, 734 S.W.2d at 657. The words and phrases in the restriction must be given their commonly accepted meaning as of the date the restriction was written and must not be enlarged, extended, changed, or stretched by construction. *Id*. at 657-58.

Restrictive covenants are subject to the general rules of contract construction. *Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998). If a restrictive covenant is subject to more than one reasonable interpretation so that the intention of the parties cannot be determined, the restriction is ambiguous. *See Columbia Gas Transmission Co. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996). Whether a restrictive covenant is ambiguous is a question of law that must be decided by examining the covenant as a whole in light of the circumstances present when it was drafted. *See id.*

The deed restriction on Jennings's property prohibits "mobile homes." To determine if ambiguity exists, we must look to the common and ordinary meaning of the term "mobile home" as of the date the restriction was drafted to determine if the prohibition on mobile homes is susceptible to two or more meanings. *See Dempsey v. Apache Shores Prop. Owners Assoc., Inc.*, 737 S.W.2d 589, 592 (Tex. App.—Austin 1987, no writ).

"Mobile home" is a term generally used to describe factory-built residential structures. The terminology used to describe these structures has evolved over the years to keep pace with innovations in technology and design. The original term generally associated with such housing was "house trailer." As the Texas Supreme Court observed in *Wilmoth*, 734 S.W.2d at 658, "[i]n the late 1960's the term 'mobile home' began to replace the term 'house trailer.' In the late 1970's the industry applied the term 'manufactured homes' to the products, replacing the name 'mobile home.'" As the industry began to make design improvements and use different names to avoid negative connotations associated with original types of factory-built housing, legislative changes were made to reflect the new terminology. *See Dempsey*, 737 S.W.2d at 592 ("At the time the restricted covenants were drafted [between 1968 and 1972], there was statutorily only the 'mobile

7

home.' When the need became apparent, legislation was enacted to protect consumers and the terms 'manufactured homes,' 'modular homes,' and later 'industrialized housing' were employed . . . .").

As the terms used to describe various forms of factory-built housing have evolved, the regulation of such structures has also become highly specialized. Currently, manufactured housing is regulated by the Texas Department of Housing and Community Affairs (TDHCA), while modular homes are regulated by the Texas Department of Licensing and Regulation (TDLR).[3] However, this Court has recognized that, while a statutory scheme has evolved that differentiates manufactured homes from modular homes, "[t]he differences between the two are technical and minor." *Id.*

Jennings argues that the current regulatory, statutory, and other distinctions between his home and other types of factory-built housing are sufficient to exclude his home from the language of the deed restriction. According to a letter from TDLR sent to Jennings on February 22, 2005:

> The primary difference between an industrialized (**modular**) home and a **manufactured** (HUD) home are:
>
> a. The codes to which the homes are built. Modular housing in the State of Texas is constructed to the same codes as site built housing. Manufactured housing is constructed to Federal HUD code standards;
>
> b. Modular homes <u>must</u> be installed on a permanent foundation system;

---

[3] Jennings contends that his home was assigned specific label numbers to certify that it is considered a modular home by TDLR and that it was manufactured in accordance with the requirements of the Texas Industrialized Building Code Council.

c. Titles are not issued for modular homes. Once installed the home becomes part of the real property; and

d. A municipality may not discriminate against modular homes built under the IHB program from being placed inside city limits or restrict these buildings to areas zoned for "manufactured" housing. (Please reference § 1202.251(b) of the Occupations Code).

Jennings emphasizes the fact that municipalities may not discriminate against modular homes in zoning decisions or adopt regulations that are more restrictive for modular homes than for site-built homes, including restricting the location of modular homes to areas zoned for manufactured housing. Significantly, however, while a municipality may not adopt a regulation "that is more restrictive for industrialized housing than that required" for site-built housing, the statute further states, "This section does not . . . affect deed restrictions." Tex. Occ. Code Ann. § 1202.253(e), (f)(2) (West 2004 & Supp. 2007). This language makes it clear that the legislature recognized the existence of deed restrictions prohibiting factory-built housing and indicated a clear intention that such restrictions were to remain unaffected by subsequent regulatory and statutory distinctions.

The deed restriction at issue here was written in 1978, before the terms "manufactured housing," "modular housing," or "industrialized housing" were commonly used. Because we must "look to the common and ordinary meaning of the term 'mobile home' as of the date the covenant was drafted," *Dempsey*, 737 S.W.2d at 592, the current distinctions between modular homes and manufactured homes are not dispositive. As we noted in *Dempsey*, "[t]he covenant drafters had no way to predict these subsequent technical statutory distinctions, and the language they chose should be viewed in that light." *Id*. at 593.

9

Because the covenant drafters did not have the benefit of subsequent technical statutory distinctions at the time the deed restriction on "mobile homes" was written, we hold that the covenant is unambiguous in its prohibition of mobile homes and any generic successors, regardless of minor changes in construction technology, design, or regulation.[4] To hold otherwise would essentially require drafters of restrictive covenants to foresee an infinite array of technological advances that might take place in the future and to draft a restriction prohibiting structures described by terminology that does not yet exist. Furthermore, "restrictive covenants would be rendered meaningless if they could be implicitly subverted by legislatively changing the name of that which is prohibited." *Id*. at 593. Therefore, we hold that the restrictive covenant prohibiting mobile homes is unambiguous as written and must be liberally construed to give effect to its purpose and intent, which was to prohibit mobile homes and their generic successors. *See* Tex. Prop. Code Ann. § 202.003(a). Thus, the question at hand is whether Jennings's home constitutes a mobile home or a generic successor, notwithstanding the label used by statute or regulatory authorities to describe such a structure in 2008.

---

[4] As the Tyler court of appeals has aptly stated:

> To a greater or lesser extent, almost all the machines and equipment with which we are most familiar have been dramatically improved in recent times. . . . But the most radical advances rarely result in change that so overflows the basic definition of an object so as to require its re-classification. Airplanes and automobiles have been spectacularly altered and improved over this century, but they remain airplanes and automobiles. A 1981 Cadillac bears little resemblance to a model-T Ford, but it is still an automobile.

*Gigowski v. Russell*, 718 S.W.2d 16, 19 (Tex. App.—Tyler 1986, writ ref'd).

However, when we held that the deed restriction against mobile homes in *Dempsey* was unambiguous, a jury had already made a factual finding that the structure at issue—a double-wide manufactured home—actually qualified as a mobile home. *See id.* at 593 ("Double-wides were considered 'mobile homes' at the time the covenants were drafted and the jury found, based on considerable evidence, that despite improvements in quality and appearance, they are still 'mobile homes' today. We cannot say that finding is legally or factually erroneous.").

In the present case, we do not have the benefit of a jury determination regarding whether the structure Jennings placed on his property constitutes a mobile home or a generic successor as prohibited by the deed restriction.[5] As a result, summary judgment is improper because a fact question exists regarding whether Jennings's home qualifies as the type of structure that the deed restriction prohibits. Therefore, we reverse the trial court's judgment declaring that Jennings's home violates the deed restriction against mobile homes and remand the cause for a determination of whether Jennings's home constitutes a mobile home or a generic successor of a mobile home as prohibited by the deed restriction, giving effect to the liberal construction required for unambiguous deed restrictions. *See* Tex. Prop. Code Ann. § 202.003(a).

---

[5] Due to the differences between manufactured homes and modular homes, we acknowledge that the issue of whether Jennings's home constitutes a "mobile home" or a generic successor may be a closer question than the determination made in *Dempsey*, 737 S.W.2d at 591, and *Wilmoth*, 734 S.W.2d at 657, that a double-wide manufactured home is a "mobile home." While Jennings's home may not have differed significantly in appearance from two double-wide manufactured homes labeled as "modular units" and connected on site, such a determination is necessarily a fact issue for the jury to decide.

**Notice**

A purchaser is bound only by those restrictive covenants of which he has actual or constructive notice. *Davis v. Huey*, 620 S.W.2d 561, 565-66 (Tex. 1981). Jennings concedes that he had notice of the deed restriction prohibiting mobile homes, but argues that because of his independent research and the information he received from government agencies, he was acting on a good-faith belief that his home did not violate the restriction. Jennings's good-faith belief, however, is irrelevant. A purchaser is bound by restrictive covenants of which he has notice, regardless of whether he believed that his actions violated the restriction. *See Pheasant Run Homeowners Assoc., Inc. v. Kastor*, 47 S.W.3d 747, 753-54 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (holding that property owners who are aware of deed restrictions and accompanying guidelines are considered to be on notice of such restrictions despite believing that guidelines are unclear and inapplicable); *Tien Tao Assoc., Inc. v. Kingsbridge Park Cmty. Assoc., Inc.*, 953 S.W.2d 525, 528 (Tex. App.—Houston [1st Dist.] 1997, no pet.) (holding that property owner could not argue it had no notice of deed restrictions simply because guidelines were unclear when owner acknowledged having copy of such restrictions).

However, because we have determined that a fact issue exists regarding whether Jennings's home is prohibited by the deed restriction, we also reverse and remand the issue of whether Jennings had notice that his actions in placing such a structure on his property violated the deed restriction. We cannot conclude that Jennings was on notice that his actions violated the restriction when there has been no final determination regarding whether a violation actually

12

occurred. As a result, the trial court's declaratory judgment that Jennings had notice that his actions violated the restriction is also reversed and remanded.

**The Permanent Injunction**

Jennings argues that the Bindseil Landowners have not established that they will suffer an actual and substantial injury because of the presence of a modular home on Jennings's property. While the general rule is that one seeking injunctive relief must establish an actual and substantial injury, "[t]here is a well-settled exception to the general rule in restrictive covenant cases." *Gigowski v. Russell*, 718 S.W.2d 16, 21 (Tex. App.—Tyler 1986, no writ.). A covenant restricting the use of land may be enforced by injunction without a showing of any particular amount of damages, provided there is a distinct or substantial breach of the restrictive covenant. *Id.* However, because we have determined that the Bindseil Landowners failed to conclusively establish through summary-judgment evidence that Jennings committed a distinct or substantial breach of the deed restriction against mobile homes, we also reverse the trial court's judgment issuing a permanent injunction.

**Attorney's Fees**

In its order granting summary judgment in favor of the Bindseil Landowners, the trial court granted the Bindseil Landowners' request for attorney's fees. Because we have reversed and remanded this case for a factual determination regarding whether the structure placed on Jennings's property was in violation of the deed restriction against mobile homes, we also remand the issue of

13

attorney's fees for the trial court's reconsideration pending the outcome of the necessary factual determination.

## CONCLUSION

Because a genuine issue of material fact exists regarding whether the structure Jennings placed on his property constitutes a mobile home or a generic successor as prohibited by the deed restriction applicable to his property, we reverse the trial court's judgment and remand this case for further proceedings consistent with this opinion.

_____

Diane Henson, Justice

Before Chief Justice Law, Justices Waldrop and Henson;
  Concurring and Dissenting Opinion by Justice Waldrop

Reversed and Remanded

Filed:   February 22, 2008

14