Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio





# MEMORANDUM OPINION

No. 04-10-00395-CV

Larry **EDBERG** and Julie Edberg,
Appellants

v.

## THE LAUREL CANYON RANCH ARCHITECTURAL REVIEW COMMITTEE,
Appellee

From the 38th Judicial District Court, Medina County, Texas
Trial Court No. 07-02-18317-CV
Honorable Camile G. DuBose, Judge Presiding

Opinion by:  Phylis J. Speedlin, Justice

Sitting:  Catherine Stone, Chief Justice
Phylis J. Speedlin, Justice
Steven C. Hilbig, Justice

Delivered and Filed:  February 16, 2011

AFFIRMED

Larry Edberg and Julie Edberg (the "Edbergs") challenge the summary judgment granted in favor of the Laurel Canyon Ranch Architectural Review Committee (the "ARC").  We affirm the trial court's judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

On June 27, 2006, the Edbergs purchased Lot 121 of Unit 2 of the Laurel Canyon Ranch subdivision and began constructing a home.  Laurel Canyon Ranch is governed by the

Declaration of Covenants, Conditions and Restrictions for The Laurel Canyon Ranch, Unit 2 of Medina County, Texas (the "Declaration"). On December 15, 2006, the ARC sent a letter to the Edbergs alerting them that their home did not meet the Declaration's design guidelines and requesting that they submit construction plans for ARC approval. Thereafter, the Edbergs sued the ARC and the individual members of the ARC, requesting declaratory relief. In response, the ARC and the individual members of the ARC filed motions for summary judgment, which the trial court granted.

The Edbergs appealed that judgment, challenging the summary judgment on the ground that the Declaration did not, by its express language, impose any covenants or restrictions on their property. *Edberg v. Laurel Canyon Ranch Architectural Review Comm.*, No. 04-08-00290-CV, 2009 WL 1089432 (Tex. App.—San Antonio Apr. 22, 2009, no pet.) (mem. op., not designated for publication) ("*Edberg I*"). We agreed, and held that the ARC did not prove as a matter of law that the Declaration applied to the Edbergs' property because the words "Unit 1"—as opposed to "Unit 2"—appeared twice in the relevant portion of the Declaration, and because we could not say that the references to "Unit 1" were "typographical errors as a matter of law *on this record*."[1] *Id.* at *4 (emphasis original). We remanded the cause to the trial court for further proceedings.

Upon remand, the ARC again moved for summary judgment on the Edbergs' claims,[2] this time arguing that the Declaration's references to "Unit 1" were typographical errors, and therefore the Declaration did burden the Edbergs' property as a matter of law. The ARC also

---

[1] Our opinion in *Edberg I* noted that neither party had argued that the references in the Declaration to "Unit 1" were typographical errors. *See Edberg I*, 2009 WL 1089432, at *4.

[2] Subsequent to remand, the Edbergs filed their Fifth Amended Original Petition, asserting, in addition to their request for declaratory judgment, claims for fraud, negligent misrepresentation, tortious interference with property rights, and tortious interference with existing contract. Aside from the declaratory judgment request, the Edbergs appeal only the denial of their claim for tortious interference with property.

argued there was no evidence that it tortiously interfered with the Edbergs' property rights. The trial court granted summary judgment in favor of the ARC. The Edbergs timely appealed.

## STANDARD OF REVIEW

We review both traditional and no-evidence summary judgments de novo. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156 (Tex. 2004). We consider the evidence in the light most favorable to the non-movant and indulge all reasonable inferences and resolve any doubts in the non-movant's favor. *Id.* at 157. We will affirm a traditional summary judgment only if the movant established that there are no genuine issues of material fact and it is entitled to judgment as a matter of law on a ground expressly set forth in the motion. *Id.* We will affirm a no-evidence summary judgment only if the non-movant failed to produce more than a scintilla of probative evidence raising a genuine issue of material fact on a challenged element of the cause of action. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). When the trial court does not specify the grounds for its summary judgment, we must affirm the judgment so long as any one of the theories advanced in the motion is meritorious. *Joe*, 145 S.W.3d at 157.

## DISCUSSION

The Edbergs bring two issues on appeal, arguing that the trial court erred in granting summary judgment in favor of the ARC because the Declaration does not burden Unit 2 as a matter of law and because it presented more than a scintilla of evidence to support its claim for tortious interference with property rights.

### *Applicability of the Declaration to the Edbergs' Property*

We review a trial court's interpretation of a restrictive covenant de novo in accordance with general rules of contract construction. *Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998); *Ski Masters of Tex., LLC v. Heinemeyer*, 269 S.W.3d 662, 667 (Tex. App.—San Antonio

2008, no pet.). Covenants are examined as a whole in light of the circumstances present when the parties entered into the agreement. *Pilarcik*, 966 S.W.2d at 478. We give effect to every sentence, clause, and word of a covenant, and avoid constructions that would render parts of the covenant superfluous or inoperative. *Owens v. Ousey*, 241 S.W.3d 124, 129-30 (Tex. App.—Austin 2007, pet. denied). Our primary intent is to ascertain and give effect to the true intention of the parties as expressed in the instruments. *Id.* Restrictive covenants must be liberally construed to effectuate their purposes and intent. *See* TEX. PROP. CODE ANN. § 202.003(a) (West 2007); *Sonterra Capital Partners, Ltd. v. Sonterra Prop. Owners Ass'n, Inc.*, 216 S.W.3d 417, 420 (Tex. App.—San Antonio 2006, no pet.).

The Edbergs contend the trial court erred in finding that Unit 2 of the Laurel Canyon Ranch subdivision was burdened by the Declaration because it expressly provides that Unit 1 shall be burdened. The covenant at issue provides:

> Declarant [Laurel C Ranch LP] now desires, for its own best interest and for the interest of other persons who may purchase property within the confines of the Laurel Canyon Ranch, *Unit 1*, that there be established and maintained a uniform plan for improvement and development as a residential subdivision.
>
> NOW, THEREFORE, Declarant hereby declares, adopts, establishes, and *imposes upon the Laurel Canyon Ranch, Unit 1*, the following reservations, easements, restrictions, covenants, and conditions, applicable thereto, all of which are for the purpose of enhancing the value, desirability, and attractiveness of all of the properties in the Laurel Canyon Ranch, *Unit 2*. These easements, covenants, restrictions, and conditions shall run with the title to said real property and shall be binding upon all parties having or acquiring any right or title, or interest in any lot or lots in the Laurel Canyon Ranch, *Unit 2*, or any part thereof, and their respective heirs, successors, and assigns, and shall inure to the benefit of each Owner and holder thereof. Declarant also declares that, upon its creation and transfer of authority by Declarant to the Property Owners Association, as provided for hereinafter, all of the lots in Laurel Canyon Ranch, *Unit 2*, shall be subject to the jurisdiction of the Property Owner's Association for the Laurel Canyon Ranch as provided for herein.

(emphasis added).

The Edbergs contend that the two references to "Unit 1" preclude application of the Declaration to their property, which is located in Unit 2. Their argument is supported, they maintain, by our prior opinion, in which we stated that "the plain language of the Declaration imposes only upon Unit 1 'the following reservations, easements, restrictions, covenants, and conditions,' which it states is for the purpose of 'enhancing the value, desirability, and attractiveness of all the properties in the Laurel Canyon Ranch, Unit 2.'" *Edberg I*, 2009 WL 1089432, at *4. We noted that neither the Edbergs nor the ARC argued that the references to Unit 1 were typographical errors. *Id.* (citing *Doe v. Tex. Ass'n of Sch. Bds., Inc.*, 283 S.W.3d 451, 461 (Tex. App.—Fort Worth 2009, pet. denied) (holding that the agreement was not ambiguous because the singular term "incident" was nothing more than a typographical error); *Ussery Invs. v. Canon & Carpenter, Inc.*, 663 S.W.2d 591, 593 (Tex. App.—Houston [1st Dist.] 1983, writ dism'd) (explaining that provision in restrictive covenant that provided restrictions, covenants, and limitations were to expire on January 1, 1955, was typographical mistake as "the document in which they were filed stated that they were to expire seventeen years before they were even filed"). In sum, we held that based on the summary judgment record then before us, which did not contain evidence of a typographical error, the express language of the Declaration did not burden Unit 2, and therefore the Declaration did not impose any covenants or restrictions on the Edbergs' property. *Edberg I*, 2009 WL 1089432, at *4. We remanded the cause to the trial court for further proceedings.

Upon remand, the ARC moved for summary judgment on the basis that the Declaration burdened Unit 2, including Lot 121, because the evidence established that the two references to "Unit 1" were merely typographical errors and that the declarant's intent was to burden lots located in Unit 2. In support, the ARC attached evidence showing that the declarant, Laurel C

Ranch, LP, and its managing partner and authorized agent and representative, Peter Serebrenik, intended to burden Unit 2 when drafting the Declaration. In his affidavit, Serebrenik states that he prepared and filed the Restrictions for Laurel Canyon Ranch, Unit 1. When he developed the second phase of Laurel Canyon Ranch (Unit 2), he used Unit 1's restrictions as a template for preparing restrictions for Unit 2. Serebrenik states:

> I asked my assistant to create the template for the Unit 2 restrictions by copying the Declaration of Restrictions of Unit 1 and to substitute "Unit 2" for each reference to "Unit 1" in the Unit 1 restrictions. My assistant faithfully replaced each reference to Unit 1 except for two references: "Unit 1" was left unsubstituted in the second paragraph of Section I and in the first sentence of the third paragraph of Section I of the Declaration of Restrictions for Unit 2. Leaving the two references to Unit 1 in the Declaration of Restrictions for Laurel Canyon Ranch, Unit 2, was a mistake — a clerical error. My sole intention in preparing the Unit 2 Declaration of restrictions, as the authorized agent and representative for the Declarant, was to burden the Unit 2 lots with the covenants, conditions, and restrictions contained therein.

Serebrenik similarly testified by deposition that his intent in drafting the Declaration was to burden the property in Unit 2 and that the two references to Unit 1 were obvious errors which were likely the result of adapting other declarations for use for Unit 2.

The ARC further argued that the declarant's intent to burden Unit 2 was reflected in other portions of the Declaration itself, including its title ("Declaration of Covenants, Conditions and Restrictions for The Laurel Canyon Ranch, Unit 2 of Medina County, Texas"), its introductory paragraph and definition of the premises (explicitly referring to Unit 2), and its definitions of the terms "property" and "lot" ("'property' shall refer to the Laurel Canyon Ranch, Unit 2 of Medina County, Texas"; "'lot' shall mean and refer to any of the numbered lots of land shown on the recorded plat or map of the Laurel Canyon Ranch, Unit 2 on file among the Map and Plat Records of Medina County, Texas").

The ARC also maintained that the Edbergs knew or should have known that their lot was burdened by the Declaration, as evidenced by their confirmed receipt of "recorded copy of the Restrictions for the Laurel Canyon Ranch Unit 2." Finally, the ARC alleged the Edbergs admitted that the Declaration imposed restrictions on Unit 2 when Larry Edberg acknowledged in his April 26, 2007 deposition that he had recently read the covenants and restrictions.

The Edbergs do not dispute that the two references to Unit 1 are a mistake; rather, they insist that when there is only one party to a declaration, a typographical mistake contained therein should be categorized as a unilateral mistake, and that the unilaterally mistaken party alone bears responsibility for the consequences of its error. *See, e.g., May v. San Antonio & A.P. Town Site Co*., 83 Tex. 502, 505, 18 S.W.959, 960 (1892); *F.D.I.C. v. Graham*, 882 S.W.2d 890, 897 (Tex. App.—Houston [14th Dist.] 1994, no writ); *Turberville v. Upper Valley Farms, Inc*., 616 S.W.2d 676, 678-79 (Tex. Civ. App.—Corpus Christi 1981, no writ); *see also Wentwood Woodside I, LP v. GMAC Commercial Mortg. Corp*., 419 F.3d 310, 316 (5th Cir. 2005). We disagree, however, that the unilateral mistake doctrine applies in this instance. It is undisputed that at the time the Edbergs received the Restrictions for The Laurel Canyon Ranch, Unit 2, both parties believed that the Declaration burdened Unit 2. Moreover, both parties conducted themselves as though the Declaration burdened Unit 2. The fact that Serebrenik, as the authorized agent and representative of Laurel C Ranch, LP, prepared the Declaration is immaterial.

Viewing the entire Declaration—which is 18 pages in length and includes eight references to "Unit 2" and two to "Unit 1"—as well as the evidence of the drafter's intent presented by the ARC, we conclude that the references to "Unit 1" are typographical errors. Typographical errors "must yield to the well-established doctrine that written contracts will be

construed according to the intention of the parties, notwithstanding errors and omissions, by perusing the entire document and to this end, words, names, and phrases obviously intended may be supplied." *Ussery*, 663 S.W.2d at 593; *see also Falk & Fish, L.L.P., v. Pinkston's Lawnmower & Equip., Inc.*, 317 S.W.3d 523, 527-28 (Tex. App.—Dallas 2010, no pet.); *Doe*, 283 S.W.3d at 461. We also reject the Edbergs' contention presented at oral argument that, in order for the "typographical error doctrine" to apply, the mistake must be verifiable from the document itself. Although the error in *Ussery* was apparent from the face of the document, the *Ussery* court did not restrict its holding to instances involving obvious mistakes. *See Ussery*, 663 S.W.2d at 593. Accordingly, we may substitute "Unit 2" for the two erroneous references to "Unit 1." We hold that based on the summary judgment record currently before us, the Declaration did burden the Edbergs' property as a matter of law, and the trial court did not err in granting summary judgment on that basis. We overrule the Edbergs' first issue.

***Tortious Interference with Property Rights***

The Edbergs next contend the trial court erred in dismissing their claim for tortious interference with property rights. The parties agree that the elements of this cause of action are: (1) that an interference with one's property or property rights occurred; (2) such interference was intentional and caused damage; and (3) the interference was conducted with neither just cause nor legal excuse. *See In re Estate of Price*, No. 04-05-00438-CV, 2006 WL 3725542, at *4 (Tex. App.—San Antonio Dec. 20, 2006, pet. denied) (mem. op., not designated for publication) (noting requirements for tortious interference action); *see also King v. Acker*, 725 S.W.2d 750, 754 (Tex. App.—Houston [1st Dist.] 1987, no writ) (holding that a cause of action for tortious interference with inheritance rights exists in Texas).

The ARC moved for summary judgment on this claim on no-evidence grounds. In their response, the only evidence of interference the Edbergs point to is an *unsigned* letter directed to them on behalf of the ARC on December 15, 2006. (emphasis in original). The letter states in relevant part as follows:

> This letter places you on further notice that the plans and color scheme of the home under construction on Lot 121 have not been approved by the Architectural Review Committee.
>
> Although neither of us expected or should be in the current state of affairs, a proactive attitude will bring us back on track. Towards that goal, we accelerate this process to benefit you and enhance the value of your property.
>
> The Architectural Review Committee (ARC) has no record of your construction document submission for ARC approval, nor any on-file documentation granting said approvals before starting construction. We find no documentation with the required ARC approvals for exterior materials, colors, etc. on file at the LCR office. The ARC directs your attention to the Declaration of Covenants, Conditions and Restrictions for The Laurel Canyon Ranch (LCR), specifically Section IV titled Architectural Review Committee and Design Guidelines.
>
> While stopping work on your property may cause an inconvenience, work cannot continue until the requirements of Section IV have been addressed and proper approvals are issued. These requirements are not subject to granting of a waiver regardless of construction already in place. These covenants, conditions, and restrictions are mandated and enforced for your protection as well as for protection of the Laurel Canyon Ranch Community.
>
> The ARC wants to resolve this delinquency and bring your home to compliance as quickly as possible and without legal recourse. Please submit the required documentation to the LCR on-site office. The ARC will quickly review and provide specific corrective direction for any item found not in compliance and/or approval. There may be in-place construction features which may require removal if not in compliance with Section IV or mandated by the ARC.
>
> The Laurel Canyon Ranch Architectural Review Committee looks forward to hearing from you.

The Edbergs go on to state in the summary judgment response that this interference caused them damage, and allege that the halting of the construction caused them to default on their construction loan, and their lender then foreclosed on their home. The Edbergs assert that the

ARC had no right to interfere with the construction of their home because the Declaration does not apply to Unit 2.

Without deciding whether the December 15, 2006 letter constitutes an interference with property or property rights, the Edbergs cannot prevail on their claim because there is no evidence that the ARC lacked just cause or legal excuse in sending the letter. The ARC is a legally constituted non-profit association. *See Edberg I*, 2009 WL 1089432, at *2-3. Further, as discussed, *supra*, the Declaration burdens Unit 2, and therefore the ARC was justified in alerting the Edbergs that their construction did not adhere to the design guidelines contained within the Declaration. Because the Edbergs cannot establish at least one of the elements of their claim for tortious interference with property, the trial court did not err in granting summary judgment on this ground. Therefore, the Edbergs' second issue is overruled, and the judgment of the trial court is affirmed.

Phylis J. Speedlin, Justice