# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

=============================

## ON MOTION FOR REHEARING

=============================

### NO. 03-05-00329-CV

**Appellants, Robert L. Owens, Jr. and Sylvia Lee Owens//Cross-Appellees, Michael Ousey, Kirsten Ousey, Robert F. West and Elizabeth West**

**v.**

**Appellees, Michael Ousey, Kirsten Ousey, Robert F. West and Elizabeth West//Cross-Appellants, Robert L. Owens, Jr. and Sylvia Lee Owens**

---

### FROM THE DISTRICT COURT OF HAYS COUNTY, 207TH JUDICIAL DISTRICT NO. 03-1778, HONORABLE CHARLES R. RAMSAY, JUDGE PRESIDING

---

### O P I N I O N

We withdraw our opinion and judgment issued June 8, 2007, and substitute the following in its place. We overrule appellees' motion for rehearing.

This is an appeal from a final judgment granting a mandatory permanent injunction to enforce restrictive covenants. The injunction compelled Robert L. Owens, Jr. and Sylvia Lee Owens to remove a mobile home from a lot they owned adjacent to lots owned by Michael and Kirsten Ousey and Robert and Elizabeth West. The Owenses appeal, contending that the injunction purported to enforce restrictive covenants that had expired in 2001, that purported 2003 "amendments" to "extend" the covenants were void, and that the covenants cannot be enforced under

an implied negative reciprocal easement theory. Appellees bring a cross-appeal contending that the district court erred in refusing to award them damages for the Owenses' breaches of restrictive covenants both on the lot in question and on an adjacent Owens-owned lot where the Owenses had initially placed the mobile home. For reasons explained below, we affirm in part, reverse in part, render in part, and remand in part.

## BACKGROUND

Appellees and the Owenses own adjoining properties in a residential, unincorporated area of Hays County near San Marcos. The Owenses own two adjoining lots, a .23-acre lot located to the immediate west of, and sharing a common boundary with, a .715-acre lot. The Owenses' lots are located at essentially the southeast corner of three lots owned by appellees. Along the north and west boundaries of the Owenses' .23-acre lot are two lots totaling roughly 15 acres owned by the Ouseys. The Wests own a .716-acre lot bordering the Owenses' .715-acre lot to the north and one of the Ouseys' lots to the east.[1]

The deeds to both of the Owenses' lots contain restrictive covenants prohibiting, among other things, the placement of mobile homes on the property. The deed to the .715-acre lot, executed in 1976, specifies that the restrictive covenants:

> shall be in full force and effect for a period of twenty-five years. However, any restrictive covenant or covenants may be renewed at the end of said 25 year period, or may, at any time, be altered amended or cancelled by a majority vote of the owners of the property, each lot, whether owned by one or more persons, having and being entitled to one vote, on any question of alteration, amendment of [sic] cancellation

---

[1] A survey plat illustrating the locations of the lots is attached as Appendix A.

of any restriction.[2]

By contrast, the deed to the .23-acre lot, executed in 1984, does not specify a time limit or term for its restrictive covenants.

In October 2003, the Owenses placed a mobile home on the .23-acre lot. Appellees notified the Owenses of their objection to the placement of the mobile home on that lot, maintaining that it violated restrictive covenants on the property. On October 22, 2003, appellees voted to "amend" and "extend" the deed restrictions on the .715-acre lot. On the same date, appellees notified the Owenses of this action. Thereafter, on or about November 3, 2003, the Owenses moved the mobile home to their .715-acre lot. On or about November 6, 2003, appellees recorded a document entitled "Amendment/Extension of Deed Restrictions," pertaining to the Owenses' .715-acre lot, in the real property records of Hays County. This document purported to "extend and amend the covenants" applicable to the .715-acre lot, including those prohibiting mobile homes, and added some new restrictions.

After the Owenses refused to remove the mobile home from their .715-acre lot, appellees sued for damages and a mandatory permanent injunction requiring the Owenses to remove the mobile home from their property. Appellees asserted claims that (1) the Owenses violated "a deed restriction" applicable to the .23-acre lot by placing a mobile home there on or about October 1 and refusing to remove it until on or about November 4, 2003; (2) the Owenses violated "applicable deed restrictions" on the .715-acre lot by "moving and installing a mobile home" there and refusing to remove it; and alternatively, (3) the placement of the mobile home on either lot

---

[2] The parties dispute whether the deed clearly identifies "owners of the property" authorized to amend the restrictions. Ultimately, we need not reach that issue.

3

violated implied reciprocal negative easements applicable to both lots. Appellees also alleged that the Owenses' actions constituted a nuisance. The Owenses counter-claimed alleging that appellees' "Amendment/Extension of Deed Restrictions" "creates a cloud on Counter-Plaintiffs's land title" and requested a declaratory judgment that the instrument "is void and of no force or effect."

The case was tried to the court on mostly stipulated facts. The district court rendered judgment that:

1. The Owenses violated deed restrictions applicable to their .23-acre lot (those without a specified term or duration) by placing a mobile home there between October 1 and November 3, 2003.

2. The Owenses violated deed restrictions applicable to their .715-acre lot (those effective "for a period of twenty-five years") by placing a mobile home on that lot on November 3, 2003, and refusing to remove it. The court granted a mandatory injunction compelling the Owenses to move the mobile home off their property within thirty days after the judgment was signed.

3. "The Court finds for [the Owenses] as to [appellees'] claims of nuisance . . . and denies [appellees'] claim."

4. "[Appellees] not recover actual damages or any other kind of damages or interest from [the Owenses] and [the Owenses] not recover actual damages or any other kinds of damages from [appellees]."

5. Neither party would be awarded attorney's fees but, in the event of an appeal, each party would recover appellate attorney's fees if successful.

The district court subsequently entered findings of fact and conclusions of law. Among other facts, the court found that appellees had proven statutory damages as to the Owenses' .23-acre lot of $6,000 and $99,000 as to the Owenses' .715-acre lot. *See* Tex. Prop. Code Ann. § 202.004(c) (West 2007) (providing that a court "may assess civil damages for the violation of a restrictive covenant in an amount not to exceed $200 for each day of the violation"). It also found

4

that the Wests had incurred loss of value to their property of $36,000 and that the Ouseys had incurred a loss of $60,000. However, the district court concluded that "[i]n accordance with the Court's discretion," appellees were "not entitled to recover damages" or interest.

The district court also found that appellees had incurred $14,024.70 in attorney's fees through trial, that the Owenses had incurred $20,000 in attorney's fees through trial, and that each party would incur $5,000 and $3,000 in attorney's fees on appeal to the court of appeals and the supreme court, respectively. The court concluded that "[i]n accordance with the Court's discretion," neither party was entitled to recover their attorney's fees through judgment, but each party could recover their appellate attorney's fees if successful.

## ANALYSIS

The Owenses bring eight issues on appeal. They do not challenge the judgment that they violated restrictive covenants encumbering their .23-acre lot (where they initially placed the mobile home) but assert that the district court erred in rendering judgment that they violated restrictive covenants encumbering their .715-acre lot and in awarding mandatory injunctive relief. In their first issue, the Owenses argue that the restrictions encumbering their .715-acre lot made the basis for appellees' claims expired by their terms in August 2001 and could not be "amended" or "extended" by appellees' actions over two years after that date. The Owenses contend in their eighth issue that the district court erred in refusing to grant their request for a declaration that appellees' purported "amendment" or "extension" of the deed restrictions is void. In their second and seventh issues, the Owenses assert that appellees lack standing to enforce the restrictive covenants encumbering their .715-acre lot. The Owenses' remaining issues challenge the applicability of the

5

implied negative restrictive easement theory on several grounds, including their contention that this theory cannot apply when, as here, the subject property is covered by express deed restrictions that had expired by their terms.

Appellees bring a cross-appeal asserting that the district court abused its discretion in denying their claims for statutory damages, common-law damages as to the .715-acre lot,[3] and attorney's fees. They also complain that the district court abused its discretion in awarding the Owenses conditional appellate attorney's fees.

**The Owenses' appeal**

***Applicability of express deed restriction***

We consider first whether express deed restrictions applied to the Owenses' .715-acre lot. When construing restrictive covenants, we apply the general rules of contract construction. *Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998). We examine the covenants as a whole in light of the circumstances present when the parties entered into the agreement. *Id.* Our primary concern is to ascertain and give effect to the true intention of the parties as expressed in the instrument. *See Gulf Ins. Co. v. Burns Motors*, 22 S.W.3d 417, 424 (Tex. 2000). Like other questions of law, we review a trial court's construction of restrictive covenants de novo. *Raman Chandler Props., L.C. v. Caldwell's Creek Homeowners Ass'n*, 178 S.W.3d 384, 390 (Tex. App.—Fort Worth 2005, pet. denied); *City of Pasadena v. Gennedy*, 125 S.W.3d 687, 692 (Tex. App.—Houston [1st Dist.] 2003, pet. denied).

---

[3] On rehearing, appellees have clarified that "[n]o common law damages were sought for the .23 acre lot deed violation."

6

The deed to the Owenses' .715-acre lot contains restrictive covenants prohibiting "noxious or other offensive activity," structures other than "one single family dwelling unit not to exceed two stories in height," any "mobile home, house trailer, tent, shack, garage or other out building [that] shall be used for residential purposes," or moving a dwelling situated outside the lot onto the lot or allowing it to remain there. It further provided that these restrictions:

> shall be in full force and effect for a period of twenty-five years. However, any restrictive covenant or covenants may be renewed at the end of said 25 year period, or may, at any time, be altered, amended or cancelled by a majority vote of the owners of the property, each lot . . . having and being entitled to one vote, on any question of extension of said restrictions, and on any question of alteration, amendment of [sic] cancellation of any restriction.

The deed was executed on October 22, 1976. Under its terms, the restrictive covenants were to remain "in full force and effect for a period of 25 years," or only until October 22, 2001. Appellees contend that the "amendments" and "extension" of the deed restrictions that they voted to approve on October 22, 2003, and recorded on or about November 3—two years after the 25-year period had expired—made the restrictions effective through the relevant period. The Owenses contend that because the deed restrictions expired by their terms in October 2001, appellees necessarily could not have "extended" or "amended" the restrictions two years thereafter. Appellees point to the provisos that "any restrictive covenant or covenants may be renewed *at the end of said 25 year period*, or may, *at any time*, be altered, amended or cancelled." (Emphasis added.) They urge that these terms allow them to amend the restrictions "at any time," even two years after the "end of said 25 year period." We agree with the Owenses.

We must construe restrictive covenants as a whole, give effect to every sentence,

7

clause, and word of a covenant, and avoid constructions that would render parts of the covenant superfluous or inoperative. *See City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 29 (Tex. 2003). Appellees' construction, while literally supported by the words "at any time" if read in isolation, is inconsistent with the deed restrictions as a whole and renders the explicit 25-year term superfluous. Read in its proper context, the provision necessarily means that the restrictions may be amended "at any time" while they remain in effect. Similarly, the provision that the restrictions may be extended "*at* the end of said 25 year period" does not contemplate a time *two years after* the end of that period. (Emphasis added.) The fact that the property code requires restrictive covenants to be "liberally construed," *see* Tex. Prop. Code Ann. § 202.003(a) (West 2007), does not change our analysis—even under a liberal construction, the plain language of the deed states that the restrictive covenants are in effect for a 25-year period.

For these reasons, we conclude that the express restrictive covenants in the deeds to the Owenses' .715-acre lot had expired long before October 2003, when the Owenses moved a mobile home onto the property, and that appellees' purported "extensions" and "amendments" to the restrictions were void and ineffective. We sustain the Owenses' first and eighth issues, and need not reach their second and seventh issues, which concern appellees' standing to enforce these restrictions.

### *Implied reciprocal negative easement*

In the alternative, appellees plead that even if the express deed restrictions had expired, the Owenses were still barred from placing a mobile home on their property under an implied reciprocal negative easement theory. An implied reciprocal negative easement may arise

8

or operate when:

> an owner of real property subdivides it into lots and sells a substantial number of those lots with restrictive covenants designed to further the owner's general plan or scheme of development. The central issue is usually the existence of a general plan of development. The lots retained by the owner, or lots sold by the owner from the development without express restrictions to a grantee with notice of the restrictions in the other deeds, are burdened with what is variously called an implied reciprocal negative easement, or an implied equitable servitude, or negative implied restrictive covenant, that they may not be used in violation of the restrictive covenants burdening the lots sold with the express restrictions.

*Evans v. Pollock*, 796 S.W.2d 465, 466 (Tex. 1990). The Owenses challenge the application of this principle on several grounds,[4] including that an implied reciprocal negative easement cannot arise where, as here, the subject property was sold with express restrictions that are the same as those allegedly implied. We agree with the Owenses.

As the supreme court observed in *Evans*, the implied reciprocal negative easement doctrine applies to enforce restrictions against lots "retained by the owner, or lots sold . . . *without express restrictions* to a grantee with notice of the restrictions in the other deeds." *Id*. (Emphasis added). The reason courts imply restrictions on these lots is to give effect to the general development scheme intended by the grantor. *Id*. But here, the deed to the Owenses' .715-acre lot contains *express* restrictions that reflect the grantor's intent. We conclude that no restrictions may be implied in the face of the express deed restrictions. We sustain the Owenses' third issue and need

_____

[4] It is unclear whether the district court's judgment is also predicated on this theory. The court did not explicitly address this theory, although it made fact findings that appear possibly to address some but not all of its elements. To avoid deemed findings, the Owenses requested additional fact findings regarding each element, which the district court declined to make. However, because both parties briefed the issue, and because we ultimately conclude that the implied reciprocal easement theory cannot apply here, we proceed to address it.

9

not reach their remaining issues.

### *Disposition*

In light of our disposition of the Owenses' issues, we must reverse the portions of the district court's judgment holding that the Owenses violated restrictive covenants encumbering their .715-acre lot and granting injunctive relief compelling them to move the mobile home off this lot. The Owenses are also entitled to a declaration that appellees' post-expiration "extension" or "amendment" of the restrictive covenants applicable to the .715-acre lot is void.

As the Owenses are now the prevailing party on their declaratory judgment claim, we will remand the issue of their attorney's fees to afford the district court the opportunity to exercise its discretion to decide whether to award them. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 1997); *McMillin v. State Farm Lloyds*, 180 S.W.3d 183, 211 (Tex. App.—Austin 2005, pet. denied).

On rehearing, appellees complain that this Court erred in its original opinion in rendering a declaratory judgment in favor of the Owenses and remanding the issue of their attorney's fees under that cause of action. Appellees insist that the Owenses' declaratory-judgment counterclaim presented no new controversy apart from the issues raised in appellees' suit and therefore could not support an attorney's fee award. We disagree.

The "Declaratory Judgment Act is not available to settle disputes already pending before a court," *BHP Petroleum Co. v. Millard*, 800 S.W.2d 838, 841 (Tex. 1990), and it cannot be used as a vehicle for defendants to obtain attorney's fees merely for resisting the plaintiff's right to recover. *See HECI Exploration Co. v. Clajon Gas Co.*, 843 S.W.2d 622, 638-639

(Tex. App.—Austin 1992, writ denied). However, a counterclaim for declaratory relief is appropriate where it is more than a mere denial of the plaintiff's claim and it has greater ramifications than the original suit. *BHP Petroleum Co.*, 800 S.W.2d at 842. "A counterclaim has greater ramifications than the original suit if it seeks affirmative relief." *Howell v. Mauzy*, 899 S.W.2d 690, 706 (Tex. App.—Austin 1994, writ denied). To state a claim for affirmative relief, a defendant must allege a cause of action "independent of the plaintiff's claim on which the defendant could recover benefits, compensation, or relief, even if the plaintiff were to abandon or fail to establish his cause of action." *Id.* For example, in the context of suits asserting breaches of contracts or deeds, declaratory counterclaims seeking construction of such instruments may constitute claims for affirmative relief because, in contrast to a "one-time occurrence" giving rise to the plaintiff's suit, they concern the parties' ongoing and future relationship. *BHP Petroleum Co.*, 800 S.W.2d at 840-42; *Indian Beach Prop. Owners' Ass'n v. Linden*, 222 S.W.3d 682, 702 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

Appellees attempt to equate this case with decisions of this Court holding that certain declaratory counterclaims failed to state claims for affirmative relief. In *Howell v. Mauzy,* Howell sued Mauzy for violating the Texas Election Code and Mauzy counterclaimed for a declaratory judgment that all of his campaign activities complied with the Election Code. *Howell*, 899 S.W.2d at 706. This Court found that Mauzy was not entitled to recover on his declaratory judgment counterclaim because the claim "was expressly confined to denying liability on the claims Howell raised in his pleadings, and did not seek independent relief." *Id*. at 706-707. Similarly, in *HECI Exploration Co.*, this Court held that a defendant gas company could not recover attorney's fees on

11

its counterclaim in which it sought a declaration of its rights and obligations under a gas-purchasing contract with the plaintiff. *HECI Exploration Co.*, 843 S.W.2d at 638-639. This Court noted that the parties had no ongoing relationship and that the alleged harm resulted from a one-time occurrence that was fully covered by the plaintiff's original suit. *Id*. Because the defendant's declaratory-judgment counterclaim sought nothing more than to avoid liability for its allegedly deficient performance under the contract, the defendant could not recover attorney fees under the declaratory judgments act. *Id*.

The Owenses' declaratory-judgment counterclaim is distinguishable from those in *Howell* and *HECI* because it seeks affirmative relief beyond the subject of appellees' suit. While appellees' suit is predicated on the violation of restrictive covenants prohibiting the placement of mobile homes on the Owenses' property, the Owenses counterclaim alleges that appellees' "Amendment/Extension of Deed Restrictions" "creates a cloud on Counter-Plaintiffs' land title" and seeks a declaration that the instrument is void in its entirety. The restrictions contained in the instrument include not only prohibitions against mobile homes, but also a ban on using the property for "any business, commercial, trade, mercantile or professional purpose"; a prohibition against subdividing the property; limitations on structures to single-family dwellings, minimum and maximum size restrictions on same, and prohibitions against using "modular, prefabricated or pre-built exterior or interior walls, or wall sections" in such structures; bans on the raising, breeding, or keeping of rabbits, poultry, dogs, cats or other animals other than household pets ("so long as no such household pets are kept in such numbers as to constitute an annoyance or nuisance to owners of other lots"); and a prohibition on "oil drilling, refining, or mining" on the lot. By seeking to

12

invalidate these and other restrictions contained in the "Amendment/Extension of Deed Restrictions," the Owenses' counterclaim is one for affirmative relief extending beyond the subject matter of appellees' suit. We further observe that the declaration sought does not merely concern a past or current violation of restrictive covenants, but clarifies and defines the parties' ongoing relationship into the future. *BHP Petroleum Co.*, 800 S.W.2d at 840-42; *Indian Beach Prop. Owners' Ass'n.*, 222 S.W.3d at 702. We hold that the Owenses asserted a proper declaratory-judgment claim that potentially could support an award of attorney's fees, if the district court exercises its discretion to award them. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009.

**Appellees' cross-appeal**

*Damages*

In their first issue, appellees complain that the district court abused its discretion in refusing to award them statutory damages on their claims to enforce the restrictive covenants applicable to the Owenses' two lots. Section 202.004 of the property code authorizes trial courts to assess civil damages for the violation of a restrictive covenant for an amount up to $200 per day of violation. *See* Tex. Prop. Code. Ann. § 202.004(c). The district court found that appellees had proven statutory damages of $6,000 from the roughly one-month period in which the Owenses had placed the mobile home on their .23-acre lot, and $99,000 from the period after the Owenses moved the mobile home to their .715-acre lot. Section 202.004, however, states that the court "may" award these damages, *see* Tex. Prop. Code. Ann. § 202.004(c), and the district court exercised its discretion not to award appellees any statutory damages.

Having held that the restrictive covenants in the deed to the Owenses' .715-acre lot

13

were no longer in effect when they placed the mobile home on that property, we affirm the district court's judgment denying appellees statutory damages based on those acts. However, the Owenses have not challenged the district court's judgment that they violated the restrictive covenants on their .23-acre lot. The district court chose to exercise its discretion to deny appellees statutory damages for these violations in the context of rendering a judgment that granted appellees mandatory injunctive relief compelling them to remove the mobile home from their other lot. Now that we have reversed that injunction, we believe that the district court should have the opportunity to revisit how it should exercise its discretion in deciding whether to award appellees statutory damages for the Owenses' breach of the restrictive covenants on their .23-acre lot. Accordingly, we will remand this issue to the district court.

Appellees also complain that the district court abused its discretion in refusing to award them common-law damages for the Owenses' breach of restrictive covenants on the .715-acre lot. For the same reasons that they were not entitled to injunctive relief based on the Owenses' placement of a mobile home on this lot, appellees were not entitled to damages from those acts. Further, having reviewed the record, we find no evidence of such damages. Consequently, the district court did not abuse its discretion in its ultimate determination not to award appellees common-law damages for the Owenses' breach of restrictive covenants on the .715-acre lot.

### *Appellees' attorney's fees*

Appellees also contend that the district court abused its discretion in refusing to award the $14,024 that it found they had incurred in attorney's fees. Appellees rely on section 5.006 of the property code, which provides that a trial court "*shall* allow as to a prevailing party" who asserted

an action based on breach of restrictive covenant "reasonable attorney's fees." Tex. Prop. Code Ann. § 5.006(a) (West 2003) (emphasis added). Appellees are no longer a prevailing party on their claims that the Owenses breached restrictive covenants encumbering their .715-acre lot. However, they remain a prevailing party on their claims concerning the Owenses' .23-acre lot. Accordingly, we remand to the district court to segregate and award the attorney's fees relating to this claim. *See Varner v. Cardenas*, 218 S.W.3d 68, 69 (Tex. 2007); *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 314 (Tex. 2006) (remanding because evidence of attorney's fees for entire case is some evidence of what amount of segregated fees should be).

### *The Owenses' appellate attorney's fees*

Finally, appellees contend that the district court erred as a matter of law in awarding the Owenses appellate attorney's fees conditioned on their success on appeal. They observe that, under the court's original judgment, the Owenses had no statutory or contractual basis for an attorney's fees award. The Owenses do not dispute this argument. We reverse this award but remand the issue to the district court for consideration alongside the Owenses' entitlement to attorney's fees under their declaratory judgment action.

## CONCLUSION

We reverse the portions of the district court's judgment holding that the Owenses' .715-acre lot was encumbered by restrictive covenants past August 2001, that they violated such restrictions by placing a mobile home on that lot, and enjoining them to remove the mobile home from that property. We render judgment declaring that appellees' 2003 post-expiration "extensions"

or "amendments" to these deed restrictions are void and ineffective. We affirm the district court's judgment denying appellees recovery of statutory and common-law damages for the Owenses' alleged breach of restrictive covenants on the .715-acre lot.

To enable the district court to exercise its discretion in light of our ruling, we reverse and remand the issues of (1) whether the Owenses should be awarded attorney's fees under their declaratory judgment claim, including appellate attorney's fees, and (2) whether appellees should be awarded their statutory damages under section 202.004 of the property code relating to the Owenses' breach of restrictive covenants encumbering their .23-acre lot. We also remand the issue of appellees' attorney's fees under section 5.006(a) of the property code so the district court can segregate and award the portion relating to the .23-acre lot.

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices Pemberton and Waldrop

Affirmed in part; Reversed and Rendered in part; Reversed and Remanded in part on Motion for Rehearing

Filed:   August 30, 2007

16

