TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-11-00278-CV






Appellant, Bambi Hollis // Cross-Appellants, Dale Gallagher and Carrie Gallagher


v.


Appellees, Dale Gallagher and Carrie Gallagher // Cross-Appellee, Bambi Hollis






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT

NO. D-1-GN-10-002759, HONORABLE GISELA D. TRIANA-DOYAL, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 These cross appeals address the affirmative defense of impossibility in the context
of restrictive covenants. The trial court granted summary judgment in favor of Dale Gallagher and
Carrie Gallagher based upon the impossibility defense to Bambi Hollis's claims that the Gallaghers
were in default under the terms of the restrictive covenants at issue. The trial court also partially
granted Hollis's motion for summary judgment as to the Gallaghers' counterclaim seeking
declarations that the restrictive covenants were unenforceable. On appeal, Hollis urges that the
Gallaghers failed to carry their summary judgment burden to conclusively establish impossibility or
to otherwise demonstrate a right to summary judgment.

 The Gallaghers counter that the trial court correctly granted summary judgment as
to Hollis's claims. In the alternative, they contend on cross appeal that, if the trial court erred, it only
did so by granting summary judgment in favor of Hollis as to their counterclaim seeking declaratory
relief. Because we conclude that the trial court did not err in rendering summary judgment against
Hollis's claims, we affirm the trial court's judgment. (1)


BACKGROUND


 The material facts are undisputed. The parties own lots in the Marshall Ford Vista
subdivision on Lake Travis. This single-street subdivision contains forty-five lots with
approximately half of the lots, lots 1 to 23, located on the lake side, and the remaining lots located
on the opposite side of the street. When the subdivision was created in 1966, the two developers of
the subdivision placed restrictive covenants ("restrictions") on the property, filing the restrictions
of record. The restrictive covenant at the center of the parties' dispute provides that "No two-story
dwelling shall be permitted on lots 1-23 without the consent of undersigned." The parties agree that
"undersigned" refers to the initial two developers. The restrictions also provide that they are binding
until January 1, 1986, and then automatically extended for successive ten year periods, "unless, by
a vote of a three-fourth majority of the then owners of the lots . . . , it is agreed to change said
restrictions in whole or in part." The restrictions have not been amended since their initial adoption,
and they do not create a homeowners association.

 Dale Gallagher purchased lot 23 in January 1989 and lot 24 in 1992. At the time he
purchased lot 23, there was a two-story house on the lot. Dale and Carrie Gallagher were married
in 2003, and, in 2010, they tore down the existing house on the lot and began construction of a new
two-story house. Several months after the construction of the Gallaghers' new house had begun,
Hollis brought this suit, seeking injunctive relief as well as damages and attorney's fees, based upon
the Gallaghers' alleged violation of the restrictive covenant requiring the consent of the developers
to build a two-story dwelling on a lakeside lot. Hollis owned lot 26, a non-lakeside lot located a few
lots down from the Gallaghers' lots.

 The Gallaghers answered Hollis's suit, asserting affirmative defenses and bringing
a counterclaim under the uniform declaratory judgments act ("UDJA"). See Tex. Civ. Prac. & Rem.
Code Ann. §§ 37.001-.011 (West 2008). The declarations that they sought included a declaration
that the restrictions' "requirement to obtain the approval of the developer prior to constructing a
two-story dwelling on Lots 1-23 [was] unenforceable as a matter-of-law because such approval [was]
impossible to obtain due to the deaths of said developers." By the time the construction of the
Gallaghers' new house had begun, both developers had died: one in 2007, and the other one
sometime earlier.

 The parties thereafter filed motions for summary judgment. See Tex. R. Civ. P. 166a. 
Among the grounds asserted in their motion, the Gallaghers sought summary judgment as to their
UDJA counterclaim seeking a declaration that the restrictive covenant for a two-story dwelling on
a lakeside lot was unenforceable as a matter of law. They contended that compliance with the
restrictive covenant was impossible after the developers died. In her motion, Hollis sought
no-evidence partial summary judgment on Gallaghers' affirmative defenses and their counterclaim,
see id. R. 166a(i), and argued that the Gallaghers' UDJA action was not available "to settle disputes
already pending before the court." (2)

 After a hearing, the trial court rendered judgment against Hollis's claims. In its order
on the parties' motions, the trial court stated that it had interpreted the Gallaghers' argument of
impossibility in their motion as an affirmative defense, redesignated their motion as a motion for
summary judgment on the affirmative defense of impossibility, and granted the Gallaghers leave to
add the affirmative defense of impossibility to their pleadings. See Tex. R. Civ. P. 45 (providing that
pleadings in district courts shall be construed so as to do substantial justice), 71 (allowing court to
redesignate pleadings if justice so requires), 166a(c) (allowing court to consider pleadings filed
"before judgment with permission of the court"). The trial court explained:


 Under these rules, and the general jurisdiction and power of the Court, the Court
believes the correct and just outcome is to grant summary judgment on the
Defendants' claim that the covenant "No two-story dwelling shall be permitted on
lots 1-23 without consent of undersigned" . . . has an impossible condition precedent
and is therefore unenforceable as a matter of law as of January 21, 2007, the day the
last of the "undersigned" developers passed away.



Between the time of the hearing and the trial court's order on the motions, the Gallaghers amended
their pleadings to add the affirmative defense of impossibility.

 In the order, the trial court also partially granted Hollis's motion for summary
judgment to the extent it was "based on the argument that Defendants' cause of action under the
[UDJA] is redundant to the adjudication of the Plaintiff's causes of action." The court explained that
its "ruling [was] intended to prevent Defendants from asserting matters under the umbrella of the
UDJA that are already in litigation, presumably as a means to obtain attorney's fees." These cross
appeals followed.


ANALYSIS


 In two issues, Hollis contends that the trial court erred by granting summary judgment
against her claims. She contends that the Gallaghers failed to conclusively establish the affirmative
defense of impossibility or otherwise demonstrate a right to summary judgment. She also urges that
this Court should decline to consider a separate ground raised in the Gallaghers' summary judgment
motion as an independent basis for affirmance. (3) On cross appeal, the Gallaghers contend that, if the
trial court erred, it only did so by rendering summary judgment against them on their UDJA
counterclaim.


Standard of Review


 We review a trial court's summary judgment rulings de novo. Valence Operating Co.
v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005). To prevail on a traditional motion for summary
judgment, the movant must show that there are no genuine issues of material fact and that it is
entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). When reviewing a summary
judgment, we must take evidence favorable to the nonmovant as true, indulge every reasonable
inference in favor of the nonmovant, and resolve any doubts in the nonmovant's favor. Dorsett,
164 S.W.3d at 661. When both sides move for summary judgment and the trial court grants one
motion and denies the other, we determine all questions presented and render the judgment the trial
court should have rendered. Id.

 The parties' issues also address the construction of restrictive covenants. "Like other
questions of law, we review a trial court's construction of restrictive covenants de novo." Owens
v. Ousey, 241 S.W.3d 124, 129 (Tex. App.--Austin 2007, pet. denied). "[R]estrictive covenants are
subject to the general rules of contract construction." Pilarcik v. Emmons, 966 S.W.2d 474, 478
(Tex. 1998). When a court concludes that contract language can be given a "'certain or definite legal
meaning or interpretation,'" then the language "'is not ambiguous and the court will construe the
contract as a matter of law.'" SAS Inst., Inc. v. Breitenfeld, 167 S.W.3d 840, 841 (Tex. 2005)
(quoting Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983)). "Contract terms are given their plain,
ordinary, and generally accepted meanings unless the contract itself shows them to be used in a
technical or different sense." Dorsett, 164 S.W.3d at 662.


Affirmative Defense of Impossibility


 In her appellate issues, Hollis contends that the Gallaghers failed to carry their
summary judgment burden on the affirmative defense of impossibility or to otherwise demonstrate
a right to summary judgment. See Tex. R. Civ. P. 166a(c); Diversicare Gen. Partner, Inc. v. Rubio,
185 S.W.3d 842, 846 (Tex. 2005); Nowak v. DAS Inv. Corp., 110 S.W.3d 677, 680 (Tex.
App.--Houston [14th Dist.] 2003, no pet.) ("Only when a party conclusively proves every element
of its affirmative defense is it entitled to summary judgment."). She also argues that, "[a]t best, the
[restrictions] are ambiguous on continuance of the [restrictive covenant at issue], creating a fact issue
precluding summary judgment" and that she deserves a trial on the merits, regardless of how harsh
the possible outcome.

 As a preliminary matter, we must determine whether the restrictive covenant at issue
is ambiguous. See SAS Inst., Inc., 167 S.W.3d at 841. Hollis construes the restrictive covenant as
precluding, after the death of the developers, two-story dwellings on lakeside lots "in perpetuity"
unless and until seventy-five percent of the subdivision lot owners vote to change the restriction. 
Hollis relies upon the provision in the restrictions that authorizes the property owners to amend the
restrictions "by a vote of a three-fourth majority of the then owners of the lots," arguing that this
provision impliedly passed the right to approve two-story dwellings on lakeside lots to the lot owners
as a group upon the developers' death. She urges that the intent of the restriction on two-story
dwellings was to protect views and property values on the non-lakeside lots and that her construction
of the restrictions is consistent with this intent.

 The Gallaghers counter that the restrictions, as they exist, are not ambiguous as to the
issues before this Court, and the provision authorizing the lot owners to amend the restrictions is
irrelevant because it was undisputed that they had not been amended. They also argue that, as the
restrictions exist, they contain no method of succession for the approval process for a two-story
dwelling on a lakeside lot and that they must be interpreted as they are written and not as they could
have been amended to read. In response to Hollis's arguments concerning the developers' intent to
protect the non-lakeside lots, the Gallaghers point out that the words "view" or "views" do not
appear in the restrictions, that there is a lack of limitation on the height of one-story houses, fences,
or outbuildings, and that, if the Developers' intent was an absolute ban on two-story dwellings on
the lakeside lots to protect the views and property values of the non-lakefront lots, such intent could
have easily been expressed by leaving out an approval process by the developers.

 We agree with the Gallaghers that the restrictions are not ambiguous as to the issues
before us and interpret them as a matter of law. See id. The relevant words are plain and ordinary
and their meaning clear that developer consent was required to build two-story dwellings on the
lakeside lots. See id. The restrictions, as they exist, also do not name successors to the developers'
right to consent to two-story dwellings or otherwise provide an alternative method for obtaining
consent. Neither the omission of a succession approval process or the lot owners' right to amend
the restrictions create an ambiguity in the relevant language. See id. The issue then is whether the
Gallaghers conclusively established the affirmative defense of impossibility as to the two-story
dwelling restrictive covenant as it exists.

 Texas courts refer to the impossibility defense as "impossibility of performance,
commercial impracticality, and frustration of purpose." Key Energy Servs., Inc. v. Eustace,
290 S.W.2d 332, 339 (Tex. App.--Eastland 2009, no pet.) (citing Tractebel Energy Mktg., Inc.
v. E.I. Du Pont de Nemours & Co., 118 S.W.3d 60, 64 n.6 (Tex. App.--Houston [14th Dist.] 2003,
pet. denied)). The impossibility defense may be based upon "supervening circumstances." Centex
Corp. v. Dalton, 840 S.W.2d 952, 954 (Tex. 1992). In that context, section 261 of the Restatement
(Second) of Contracts outlines the scope of the defense:


 Where, after a contract is made, a party's performance is made impractical without
his fault by the occurrence of an event the non-occurrence of which was a basic
assumption on which the contract was made, his duty to render that performance is
discharged, unless the language or the circumstances indicate the contrary.



Restatement (Second) of Contracts § 261 (1981) (titled "Discharge by Supervening Impracticality");
see also Centex Corp., 840 S.W.2d at 954-55 (citing and applying section 261 of the Restatement
(Second) of Contracts to hold that party excused from performing based upon supervening
government order).

 Hollis contends that the Gallaghers "failed to conclusively establish an element of
their impossibility defense as stated in Centex: that the 'the non-occurrence [of the developers'
deaths] was a basic assumption on which the [restrictions were] made.'" Hollis argues that "Centex
imposed upon the Gallaghers an obligation to conclusively prove that the event that they contend
rendered consent legally impossible--the developers' respective deaths--could not have been
anticipated when the [restrictions] were adopted" and that there was no evidence to support that the
developers were unaware of their own mortality. The supreme court in Centex, however, recognized
that "many factors may excuse a failure to deal with contingencies, and that even if the event [the
supervening circumstance] was reasonably foreseeable, or even foreseen, the contracting party may
still be discharged." Centex Corp., 840 S.W.2d at 955 (citing Restatement (Second) of Contracts
§ 261, cmts. b & c). Following the supreme court's analysis in Centex, we conclude that the
developers' awareness of their own mortality at the time that they adopted the restrictions is not
dispositive here.

 For the purpose of this appeal, the impossibility defense generally applies upon "the
death or incapacity of a person necessary for performance." Eustace, 290 S.W.3d at 340 (citing
Tractebel, 118 S.W.3d at 65); see also Restatement (Second) of Contracts § 262 (1981) ("If the
existence of a particular person is necessary for the performance of a duty, his death . . . is an event
the non-occurrence of which was a basic assumption on which the contract was made."); Hourani
v. Katzen, 305 S.W.3d 239, 250-51 (Tex. App.--Houston [1st Dist.] 2009, pet. denied) (upholding
summary judgment in favor of property owner and finding that property owner did not have to
comply with restrictive covenant that required pre-approval process by the board of the property
owner's association for driveway construction because the association had forfeited its existence);
Hanchett v. East Sunnyside Civic League, 696 S.W.2d 613, 615-16 (Tex. App.--Houston [14th
Dist.] 1985, writ ref'd n.r.e.) (finding that failure by property owner to satisfy restrictive covenant
requiring approval of architectural committee to move house on property "did not in itself justify
forcing [property owner] to remove his house" where evidence showed that "one member of the
committee was known to be dead, another was presumed dead, and the other member could not be
located"). The plain language of the restrictive covenant at issue made the developers "necessary
for performance." Eustace, 290 S.W.3d at 340.

 Hollis also argues that the Gallaghers relied only on subjective impossibility and that
subjective impossibility, as opposed to objective impossibility, is legally insufficient to support
summary judgment. See Janak v. Federal Deposit Ins. Corp., 586 S.W.2d 902, 906-07 (Tex. Civ.
App.--Houston [1st Dist.] 1979, no writ) (distinguishing between subjective and objective
impossibility); Johnson v. Johnson, No. 02-10-00296-CV, 2011 Tex. App. LEXIS 6140, at *5-7
(Tex. App.--Fort Worth Aug. 2, 2011, no pet.) (mem. op.) ("Objective impossibility can serve as
a defense in a breach of contract suit [whereas] a party cannot escape contract liability by claiming
subjective impossibility." (citation omitted)). "Objective impossibility relates solely to the nature
of the promise." Johnson, 2011 Tex. App. LEXIS 6140, at *6 (citing Janak, 586 S.W.2d at 906-07).
"Something is objectively impossible if 'the thing cannot be done,' such as an inability 'to perform
the promise to settle [a] claim by entering an agreed judgment in the lawsuit which had been
dismissed' prior to the completion of the agreement." Id. (citation omitted). In contrast,
"[s]ubjective impossibility is due wholly to the inability of the individual promisor." See id. 
"Something is subjectively impossible if 'I cannot do it,' such as when a promisor's financial
inability to pay makes it impossible for the promisor to perform." See id.

 Hollis's position that the Gallaghers relied on subjective impossibility, however, is
not supported by the record. The Gallaghers' position that it became impossible for them--or
anyone else--to obtain consent to build a two-story dwelling on the lakeside lots after the
developers' deaths raised objective impossibility, a "thing that [could not] be done." See Johnson,
2011 Tex. App. LEXIS 6140, at *6; see also Restatement (Second) of Contracts §§ 261, 262; Centex
Corp., 840 S.W.2d at 954 (holding that supervening circumstance, a government order, excused
party's performance under contract based upon the doctrine of impossibility); Eustace, 290 S.W.3d
at 340 (impossibility defense generally applies upon "death or incapacity of person necessary
for performance").

 Hollis also urges that the time for measuring objective versus subjective impossibility
is when the restrictions were adopted in 1966 and, "[b]ecause the condition was enforceable when
adopted, impossibility of performance is not a valid defense in this case." Hollis appears to confuse
the distinction between objective and subjective impossibility with the distinction between original
and supervening impossibility. See Janak, 586 S.W.2d at 906 (distinguishing between
original--"something which from the outset was impossible"--and supervening impossibility
"which develops sometime after the inception of the contract"). Supervening impossibility by
definition addresses an occurrence that happens after the fact. See id. The Gallaghers do not rely
upon original, but upon supervening impossibility.

 Hollis also argues that the restrictions must be "liberally construed" to effectuate the
parties' intent and that a liberal construction supports her position that the Gallaghers violated the
restrictions by proceeding to build a two-story dwelling without an amendment of the restrictions. 
See Tex. Prop. Code Ann. § 202.003(a) (West 2007) ("A restrictive covenant shall be liberally
construed to give effect to its purposes and intent."). Courts, however, may not "liberally" construe
a restrictive covenant to say something that it plainly does not say. See Owens, 241 S.W.3d at 130
(holding that requirement in section 202.003(a) of the property code to liberally construe restrictive
covenants did not change analysis of unambiguous provision that restrictive covenants were in effect
for 25-year period). Here the unambiguous language of the restrictive covenant at issue requires
developers' consent without providing an alternative person or entity to consent in the event that the
developers are unavailable.

 We conclude that the Gallaghers conclusively established the defense of impossibility
and, therefore, that the trial court did not err in granting summary judgment in favor of the
Gallaghers as to Hollis's claims. See Tex. R. Civ. P. 166a(c). We overrule Hollis's issues to the
extent that they challenge this ruling. (4)

The Gallaghers' UDJA Counterclaim


 In their cross appeal, the Gallaghers request, in the alternative, that we reverse and
render judgment for the Gallaghers on their UDJA counterclaim as pleaded, and remand for the
limited purpose of hearing the Gallaghers' claim for attorney's fees and costs under the UDJA. See
Tex. Civ. Prac. & Rem. Code Ann. § 37.009. In its order, the trial court explained that its ruling
partially granting Hollis's motion for summary judgment as to the Gallaghers' UDJA counterclaim
was "intended to prevent Defendants from asserting matters under the umbrella of the UDJA that
are already in litigation, presumably as a means to obtain attorney's fees." See MBM Fin. Corp.
v. Woodlands Operating Co., 292 S.W.3d 660, 669 (Tex. 2009) (stating rule that "a party cannot use
the [UDJA] as a vehicle to obtain otherwise impermissible attorney's fees"); Owens, 241 S.W.3d
at 132 (UDJA "cannot be used as a vehicle for defendants to obtain attorney's fees merely for
resisting the plaintiff's right to recover").

 The Gallaghers, however, ask this Court to reach their cross issue only if this Court
reverses the summary judgment rendered against Hollis's claims. They state that they only bring
their cross issue in the alternative and request "for the sake of finality" that this Court affirm the trial
court's judgment. Thus we do not address the Gallaghers' cross issue.


CONCLUSION


 Because we conclude that the trial court did not err in granting summary judgment
in favor of the Gallaghers as to Hollis's claims, we affirm the trial court's judgment.



 __________________________________________

 Melissa Goodwin, Justice

Before Justices Puryear, Rose and Goodwin

Affirmed

Filed: August 28, 2012
1. Owners of another lot in the subdivision intervened in the suit, asserting claims mirroring
Hollis's claims, but they have not appealed the trial court's judgment.
2. The Gallaghers' affirmative defenses included that the restrictions had been abandoned
and/or waived by the property owners. The Gallaghers filed a response to Hollis's no-evidence
motion and presented evidence to support findings that nine of the waterfront lots had two-story
dwellings on them, and, except for one of those dwellings, approval was not sought or obtained from
the developers.
3. In addition to arguing impossibility, the Gallaghers argued in their motion for summary
judgment that "enforcing the restriction as an absolute ban on two-story houses" after the developers'
death would constitute "a greater restriction than originally intended" and would be "an unreasonable
restraint on the use and alienation of the Gallaghers' property."
4. Because we have concluded that the trial court did not err by rendering summary judgment
against Hollis's claims based upon the impossibility defense, we need not address Hollis's arguments
concerning other grounds raised by the Gallaghers in their motion for summary judgment. See Tex.
R. App. P. 47.1. Among the grounds that they raised, the Gallaghers argued that "enforcing the
restriction as an absolute ban on two-story houses" after the developers' death would constitute "a
greater restriction than originally intended" and would be "an unreasonable restraint on the use and
alienation of the Gallaghers' property."