# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00278-CV

**Appellant, Bambi Hollis // Cross-Appellants, Dale Gallagher and Carrie Gallagher**

**v.**

**Appellees, Dale Gallagher and Carrie Gallagher // Cross-Appellee, Bambi Hollis**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT**
**NO. D-1-GN-10-002759, HONORABLE GISELA D. TRIANA-DOYAL, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

These cross appeals address the affirmative defense of impossibility in the context of restrictive covenants. The trial court granted summary judgment in favor of Dale Gallagher and Carrie Gallagher based upon the impossibility defense to Bambi Hollis's claims that the Gallaghers were in default under the terms of the restrictive covenants at issue. The trial court also partially granted Hollis's motion for summary judgment as to the Gallaghers' counterclaim seeking declarations that the restrictive covenants were unenforceable. On appeal, Hollis urges that the Gallaghers failed to carry their summary judgment burden to conclusively establish impossibility or to otherwise demonstrate a right to summary judgment.

The Gallaghers counter that the trial court correctly granted summary judgment as to Hollis's claims. In the alternative, they contend on cross appeal that, if the trial court erred, it only did so by granting summary judgment in favor of Hollis as to their counterclaim seeking declaratory

relief. Because we conclude that the trial court did not err in rendering summary judgment against Hollis's claims, we affirm the trial court's judgment.[1]

**BACKGROUND**

The material facts are undisputed. The parties own lots in the Marshall Ford Vista subdivision on Lake Travis. This single-street subdivision contains forty-five lots with approximately half of the lots, lots 1 to 23, located on the lake side, and the remaining lots located on the opposite side of the street. When the subdivision was created in 1966, the two developers of the subdivision placed restrictive covenants ("restrictions") on the property, filing the restrictions of record. The restrictive covenant at the center of the parties' dispute provides that "No two-story dwelling shall be permitted on lots 1-23 without the consent of undersigned." The parties agree that "undersigned" refers to the initial two developers. The restrictions also provide that they are binding until January 1, 1986, and then automatically extended for successive ten year periods, "unless, by a vote of a three-fourth majority of the then owners of the lots . . . , it is agreed to change said restrictions in whole or in part." The restrictions have not been amended since their initial adoption, and they do not create a homeowners association.

Dale Gallagher purchased lot 23 in January 1989 and lot 24 in 1992. At the time he purchased lot 23, there was a two-story house on the lot. Dale and Carrie Gallagher were married in 2003, and, in 2010, they tore down the existing house on the lot and began construction of a new two-story house. Several months after the construction of the Gallaghers' new house had begun,

---

[1] Owners of another lot in the subdivision intervened in the suit, asserting claims mirroring Hollis's claims, but they have not appealed the trial court's judgment.

Hollis brought this suit, seeking injunctive relief as well as damages and attorney's fees, based upon the Gallaghers' alleged violation of the restrictive covenant requiring the consent of the developers to build a two-story dwelling on a lakeside lot. Hollis owned lot 26, a non-lakeside lot located a few lots down from the Gallaghers' lots.

The Gallaghers answered Hollis's suit, asserting affirmative defenses and bringing a counterclaim under the uniform declaratory judgments act ("UDJA"). *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001–.011 (West 2008). The declarations that they sought included a declaration that the restrictions' "requirement to obtain the approval of the developer prior to constructing a two-story dwelling on Lots 1-23 [was] unenforceable as a matter-of-law because such approval [was] impossible to obtain due to the deaths of said developers." By the time the construction of the Gallaghers' new house had begun, both developers had died: one in 2007, and the other one sometime earlier.

The parties thereafter filed motions for summary judgment. *See* Tex. R. Civ. P. 166a. Among the grounds asserted in their motion, the Gallaghers sought summary judgment as to their UDJA counterclaim seeking a declaration that the restrictive covenant for a two-story dwelling on a lakeside lot was unenforceable as a matter of law. They contended that compliance with the restrictive covenant was impossible after the developers died. In her motion, Hollis sought no-evidence partial summary judgment on Gallaghers' affirmative defenses and their counterclaim, *see id*. R. 166a(i), and argued that the Gallaghers' UDJA action was not available "to settle disputes already pending before the court."[2]

---

[2] The Gallaghers' affirmative defenses included that the restrictions had been abandoned and/or waived by the property owners. The Gallaghers filed a response to Hollis's no-evidence

After a hearing, the trial court rendered judgment against Hollis's claims. In its order on the parties' motions, the trial court stated that it had interpreted the Gallaghers' argument of impossibility in their motion as an affirmative defense, redesignated their motion as a motion for summary judgment on the affirmative defense of impossibility, and granted the Gallaghers leave to add the affirmative defense of impossibility to their pleadings. *See* Tex. R. Civ. P. 45 (providing that pleadings in district courts shall be construed so as to do substantial justice), 71 (allowing court to redesignate pleadings if justice so requires), 166a(c) (allowing court to consider pleadings filed "before judgment with permission of the court"). The trial court explained:

> Under these rules, and the general jurisdiction and power of the Court, the Court believes the correct and just outcome is to grant summary judgment on the Defendants' claim that the covenant "No two-story dwelling shall be permitted on lots 1-23 without consent of undersigned" . . . has an impossible condition precedent and is therefore unenforceable as a matter of law as of January 21, 2007, the day the last of the "undersigned" developers passed away.

Between the time of the hearing and the trial court's order on the motions, the Gallaghers amended their pleadings to add the affirmative defense of impossibility.

In the order, the trial court also partially granted Hollis's motion for summary judgment to the extent it was "based on the argument that Defendants' cause of action under the [UDJA] is redundant to the adjudication of the Plaintiff's causes of action." The court explained that its "ruling [was] intended to prevent Defendants from asserting matters under the umbrella of the

---

motion and presented evidence to support findings that nine of the waterfront lots had two-story dwellings on them, and, except for one of those dwellings, approval was not sought or obtained from the developers.

UDJA that are already in litigation, presumably as a means to obtain attorney's fees." These cross appeals followed.

## ANALYSIS

In two issues, Hollis contends that the trial court erred by granting summary judgment against her claims. She contends that the Gallaghers failed to conclusively establish the affirmative defense of impossibility or otherwise demonstrate a right to summary judgment. She also urges that this Court should decline to consider a separate ground raised in the Gallaghers' summary judgment motion as an independent basis for affirmance.[3] On cross appeal, the Gallaghers contend that, if the trial court erred, it only did so by rendering summary judgment against them on their UDJA counterclaim.

### *Standard of Review*

We review a trial court's summary judgment rulings de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). To prevail on a traditional motion for summary judgment, the movant must show that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). When reviewing a summary judgment, we must take evidence favorable to the nonmovant as true, indulge every reasonable inference in favor of the nonmovant, and resolve any doubts in the nonmovant's favor. *Dorsett*, 164 S.W.3d at 661. When both sides move for summary judgment and the trial court grants one

---

[3] In addition to arguing impossibility, the Gallaghers argued in their motion for summary judgment that "enforcing the restriction as an absolute ban on two-story houses" after the developers' death would constitute "a greater restriction than originally intended" and would be "an unreasonable restraint on the use and alienation of the Gallaghers' property."

motion and denies the other, we determine all questions presented and render the judgment the trial court should have rendered. *Id.*

The parties' issues also address the construction of restrictive covenants. "Like other questions of law, we review a trial court's construction of restrictive covenants de novo." *Owens v. Ousey*, 241 S.W.3d 124, 129 (Tex. App.—Austin 2007, pet. denied). "[R]estrictive covenants are subject to the general rules of contract construction." *Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998). When a court concludes that contract language can be given a "'certain or definite legal meaning or interpretation,'" then the language "'is not ambiguous and the court will construe the contract as a matter of law.'" *SAS Inst., Inc. v. Breitenfeld*, 167 S.W.3d 840, 841 (Tex. 2005) (quoting *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)). "Contract terms are given their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense." *Dorsett*, 164 S.W.3d at 662.

### Affirmative Defense of Impossibility

In her appellate issues, Hollis contends that the Gallaghers failed to carry their summary judgment burden on the affirmative defense of impossibility or to otherwise demonstrate a right to summary judgment. *See* Tex. R. Civ. P. 166a(c); *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex. 2005); *Nowak v. DAS Inv. Corp.*, 110 S.W.3d 677, 680 (Tex. App.—Houston [14th Dist.] 2003, no pet.) ("Only when a party conclusively proves every element of its affirmative defense is it entitled to summary judgment."). She also argues that, "[a]t best, the [restrictions] are ambiguous on continuance of the [restrictive covenant at issue], creating a fact issue

precluding summary judgment" and that she deserves a trial on the merits, regardless of how harsh the possible outcome.

As a preliminary matter, we must determine whether the restrictive covenant at issue is ambiguous. *See SAS Inst., Inc.*, 167 S.W.3d at 841. Hollis construes the restrictive covenant as precluding, after the death of the developers, two-story dwellings on lakeside lots "in perpetuity" unless and until seventy-five percent of the subdivision lot owners vote to change the restriction. Hollis relies upon the provision in the restrictions that authorizes the property owners to amend the restrictions "by a vote of a three-fourth majority of the then owners of the lots," arguing that this provision impliedly passed the right to approve two-story dwellings on lakeside lots to the lot owners as a group upon the developers' death. She urges that the intent of the restriction on two-story dwellings was to protect views and property values on the non-lakeside lots and that her construction of the restrictions is consistent with this intent.

The Gallaghers counter that the restrictions, as they exist, are not ambiguous as to the issues before this Court, and the provision authorizing the lot owners to amend the restrictions is irrelevant because it was undisputed that they had not been amended. They also argue that, as the restrictions exist, they contain no method of succession for the approval process for a two-story dwelling on a lakeside lot and that they must be interpreted as they are written and not as they could have been amended to read. In response to Hollis's arguments concerning the developers' intent to protect the non-lakeside lots, the Gallaghers point out that the words "view" or "views" do not appear in the restrictions, that there is a lack of limitation on the height of one-story houses, fences, or outbuildings, and that, if the Developers' intent was an absolute ban on two-story dwellings on

7

the lakeside lots to protect the views and property values of the non-lakefront lots, such intent could have easily been expressed by leaving out an approval process by the developers.

We agree with the Gallaghers that the restrictions are not ambiguous as to the issues before us and interpret them as a matter of law. *See id.* The relevant words are plain and ordinary and their meaning clear that developer consent was required to build two-story dwellings on the lakeside lots. *See id.* The restrictions, as they exist, also do not name successors to the developers' right to consent to two-story dwellings or otherwise provide an alternative method for obtaining consent. Neither the omission of a succession approval process or the lot owners' right to amend the restrictions create an ambiguity in the relevant language. *See id.* The issue then is whether the Gallaghers conclusively established the affirmative defense of impossibility as to the two-story dwelling restrictive covenant as it exists.

Texas courts refer to the impossibility defense as "impossibility of performance, commercial impracticality, and frustration of purpose." *Key Energy Servs., Inc. v. Eustace*, 290 S.W.2d 332, 339 (Tex. App.—Eastland 2009, no pet.) (citing *Tractebel Energy Mktg., Inc. v. E.I. Du Pont de Nemours & Co.*, 118 S.W.3d 60, 64 n.6 (Tex. App.—Houston [14th Dist.] 2003, pet. denied)). The impossibility defense may be based upon "supervening circumstances." *Centex Corp. v. Dalton*, 840 S.W.2d 952, 954 (Tex. 1992). In that context, section 261 of the Restatement (Second) of Contracts outlines the scope of the defense:

> Where, after a contract is made, a party's performance is made impractical without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged, unless the language or the circumstances indicate the contrary.

8

Restatement (Second) of Contracts § 261 (1981) (titled "Discharge by Supervening Impracticality"); *see also Centex Corp.*, 840 S.W.2d at 954–55 (citing and applying section 261 of the Restatement (Second) of Contracts to hold that party excused from performing based upon supervening government order).

Hollis contends that the Gallaghers "failed to conclusively establish an element of their impossibility defense as stated in *Centex:* that the 'the non-occurrence [of the developers' deaths] was a basic assumption on which the [restrictions were] made.'" Hollis argues that "*Centex* imposed upon the Gallaghers an obligation to conclusively prove that the event that they contend rendered consent legally impossible—the developers' respective deaths—could not have been anticipated when the [restrictions] were adopted" and that there was no evidence to support that the developers were unaware of their own mortality. The supreme court in *Centex*, however, recognized that "many factors may excuse a failure to deal with contingencies, and that even if the event [the supervening circumstance] was reasonably foreseeable, or even foreseen, the contracting party may still be discharged." *Centex Corp.*, 840 S.W.2d at 955 (citing Restatement (Second) of Contracts § 261, cmts. b & c). Following the supreme court's analysis in *Centex*, we conclude that the developers' awareness of their own mortality at the time that they adopted the restrictions is not dispositive here.

For the purpose of this appeal, the impossibility defense generally applies upon "the death or incapacity of a person necessary for performance." *Eustace*, 290 S.W.3d at 340 (citing *Tractebel*, 118 S.W.3d at 65); *see also* Restatement (Second) of Contracts § 262 (1981) ("If the existence of a particular person is necessary for the performance of a duty, his death . . . is an event

9

the non-occurrence of which was a basic assumption on which the contract was made."); *Hourani v. Katzen*, 305 S.W.3d 239, 250–51 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (upholding summary judgment in favor of property owner and finding that property owner did not have to comply with restrictive covenant that required pre-approval process by the board of the property owner's association for driveway construction because the association had forfeited its existence); *Hanchett v. East Sunnyside Civic League*, 696 S.W.2d 613, 615–16 (Tex. App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.) (finding that failure by property owner to satisfy restrictive covenant requiring approval of architectural committee to move house on property "did not in itself justify forcing [property owner] to remove his house" where evidence showed that "one member of the committee was known to be dead, another was presumed dead, and the other member could not be located"). The plain language of the restrictive covenant at issue made the developers "necessary for performance." *Eustace*, 290 S.W.3d at 340.

Hollis also argues that the Gallaghers relied only on subjective impossibility and that subjective impossibility, as opposed to objective impossibility, is legally insufficient to support summary judgment. *See Janak v. Federal Deposit Ins. Corp.*, 586 S.W.2d 902, 906–07 (Tex. Civ. App.—Houston [1st Dist.] 1979, no writ) (distinguishing between subjective and objective impossibility); *Johnson v. Johnson*, No. 02-10-00296-CV, 2011 Tex. App. LEXIS 6140, at *5–7 (Tex. App.—Fort Worth Aug. 2, 2011, no pet.) (mem. op.) ("Objective impossibility can serve as a defense in a breach of contract suit [whereas] a party cannot escape contract liability by claiming subjective impossibility." (citation omitted)). "Objective impossibility relates solely to the nature of the promise." *Johnson*, 2011 Tex. App. LEXIS 6140, at *6 (citing *Janak*, 586 S.W.2d at 906–07).

"Something is objectively impossible if 'the thing cannot be done,' such as an inability 'to perform the promise to settle [a] claim by entering an agreed judgment in the lawsuit which had been dismissed' prior to the completion of the agreement." *Id*. (citation omitted). In contrast, "[s]ubjective impossibility is due wholly to the inability of the individual promisor." *See id.* "Something is subjectively impossible if 'I cannot do it,' such as when a promisor's financial inability to pay makes it impossible for the promisor to perform." *See id.*

Hollis's position that the Gallaghers relied on subjective impossibility, however, is not supported by the record. The Gallaghers' position that it became impossible for them—or anyone else—to obtain consent to build a two-story dwelling on the lakeside lots after the developers' deaths raised objective impossibility, a "thing that [could not] be done." *See Johnson*, 2011 Tex. App. LEXIS 6140, at *6; *see also* Restatement (Second) of Contracts §§ 261, 262; *Centex Corp.*, 840 S.W.2d at 954 (holding that supervening circumstance, a government order, excused party's performance under contract based upon the doctrine of impossibility); *Eustace*, 290 S.W.3d at 340 (impossibility defense generally applies upon "death or incapacity of person necessary for performance").

Hollis also urges that the time for measuring objective versus subjective impossibility is when the restrictions were adopted in 1966 and, "[b]ecause the condition was enforceable when adopted, impossibility of performance is not a valid defense in this case." Hollis appears to confuse the distinction between objective and subjective impossibility with the distinction between original and supervening impossibility. *See Janak*, 586 S.W.2d at 906 (distinguishing between original—"something which from the outset was impossible"—and supervening impossibility

11

"which develops sometime after the inception of the contract"). Supervening impossibility by definition addresses an occurrence that happens after the fact. *See id.* The Gallaghers do not rely upon original, but upon supervening impossibility.

Hollis also argues that the restrictions must be "liberally construed" to effectuate the parties' intent and that a liberal construction supports her position that the Gallaghers violated the restrictions by proceeding to build a two-story dwelling without an amendment of the restrictions. *See* Tex. Prop. Code Ann. § 202.003(a) (West 2007) ("A restrictive covenant shall be liberally construed to give effect to its purposes and intent."). Courts, however, may not "liberally" construe a restrictive covenant to say something that it plainly does not say. *See Owens*, 241 S.W.3d at 130 (holding that requirement in section 202.003(a) of the property code to liberally construe restrictive covenants did not change analysis of unambiguous provision that restrictive covenants were in effect for 25-year period). Here the unambiguous language of the restrictive covenant at issue requires developers' consent without providing an alternative person or entity to consent in the event that the developers are unavailable.

We conclude that the Gallaghers conclusively established the defense of impossibility and, therefore, that the trial court did not err in granting summary judgment in favor of the Gallaghers as to Hollis's claims. *See* Tex. R. Civ. P. 166a(c). We overrule Hollis's issues to the extent that they challenge this ruling.[4]

---

[4] Because we have concluded that the trial court did not err by rendering summary judgment against Hollis's claims based upon the impossibility defense, we need not address Hollis's arguments concerning other grounds raised by the Gallaghers in their motion for summary judgment. *See* Tex. R. App. P. 47.1. Among the grounds that they raised, the Gallaghers argued that "enforcing the restriction as an absolute ban on two-story houses" after the developers' death would constitute "a greater restriction than originally intended" and would be "an unreasonable restraint on the use and

*The Gallaghers' UDJA Counterclaim*

In their cross appeal, the Gallaghers request, in the alternative, that we reverse and render judgment for the Gallaghers on their UDJA counterclaim as pleaded, and remand for the limited purpose of hearing the Gallaghers' claim for attorney's fees and costs under the UDJA. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009. In its order, the trial court explained that its ruling partially granting Hollis's motion for summary judgment as to the Gallaghers' UDJA counterclaim was "intended to prevent Defendants from asserting matters under the umbrella of the UDJA that are already in litigation, presumably as a means to obtain attorney's fees." *See MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 669 (Tex. 2009) (stating rule that "a party cannot use the [UDJA] as a vehicle to obtain otherwise impermissible attorney's fees"); *Owens*, 241 S.W.3d at 132 (UDJA "cannot be used as a vehicle for defendants to obtain attorney's fees merely for resisting the plaintiff's right to recover").

The Gallaghers, however, ask this Court to reach their cross issue only if this Court reverses the summary judgment rendered against Hollis's claims. They state that they only bring their cross issue in the alternative and request "for the sake of finality" that this Court affirm the trial court's judgment. Thus we do not address the Gallaghers' cross issue.

**CONCLUSION**

Because we conclude that the trial court did not err in granting summary judgment in favor of the Gallaghers as to Hollis's claims, we affirm the trial court's judgment.

---

alienation of the Gallaghers' property."

13

_____

Melissa Goodwin, Justice

Before Justices Puryear, Rose and Goodwin

Affirmed

Filed:   August 28, 2012