# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00017-CV

**Frederick W. Pfaff, Appellant**

**v.**

**Yvonne Skeen and Philip Skeen, Appellees**

## FROM THE DISTRICT COURT OF COMAL COUNTY, 433RD JUDICIAL DISTRICT
## NO. 2010-0279D, HONORABLE DIB WALDRIP, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This appeal is from a summary judgment involving restrictive covenants. Appellant Frederick W. Pfaff brought suit against appellees Yvonne and Philip Skeen, alleging that the Skeens had violated various restrictive covenants that applied to the residential lots in the parties' subdivision. The parties filed competing motions for summary judgment, and the trial court granted the Skeens' motion for traditional and no-evidence summary judgment, denied Pfaff's motion for partial summary judgment, and awarded attorney's fees to the Skeens. In four issues, Pfaff challenges the trial court's summary judgment rulings and its award of attorney's fees. For the reasons that follow, we affirm the trial court's judgment in part and reverse and remand in part.

## BACKGROUND

The parties own residential lots in the Canyon Lakes Estates Subdivision in Comal County. Their dispute concerns the Skeens' placement of a pre-constructed house and a travel trailer

on their lot.  The Skeens obtained verbal approval from the subdivision's architectural control committee (the "ACC") in February 2009 to place the house on their lot, placed it on the lot in October 2009, and obtained written approval from the ACC in November 2009 to do so.  The ACC approved the placement and the Skeens' plans to modify the house and make other improvements to their lot subject to the condition that "[t]he home will be brought up to the minimum square footage requirements of 800sqft and 26ft wide by August 2010."  During construction to modify the house as well as to make the other improvements to the lot, the Skeens placed and used a travel trailer on their lot.  In July 2010, the Skeens requested and the ACC approved an extension until March 2011 to complete the modifications to the house and other improvements.

Pfaff brought this suit under the Uniform Declaratory Judgments Act (UDJA) in March 2010.  *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001–.011 (West 2008).  He sought declaratory and injunctive relief, as well as damages and attorney's fees.  He alleged that the pre-constructed house and the travel trailer on the Skeens' lot did not comply with several of the restrictive covenants ("restrictions") that applied to the lots in the subdivision.  Among other things, the restrictions provide that "any property owner in the subdivision may enforce the restrictions . . . in any manner permitted by law; and in addition to other remedies, . . . shall have the right to maintain a suit for an injunction, either prohibitive or mandatory."

In his amended petition filed in August 2010, Pfaff alleged that the Skeens:

have failed and refused to comply with certain restrictions as follows:

(a)     moved and placed a previously constructed house on their property that has less than 800 square feet of living space;

2

(b)     moved and placed a travel trailer on their property and allowing it to be used as residence during construction for more than 90 days;

(c)     placed out-buildings or used shacks on the property to contend that these structures constitute part of the required square footage for a residence;

(d)     moved and placed a previously constructed house on their property prior to submitting and getting approval of plans and specifications by the architectural control committee;

(e)     creating a noxious unsanitary condition on the property by failing to install a septic system approved by the Comal County authorities.

Pfaff also alleged that the individuals who approved the Skeens' plans were "not legally designated as members" of the ACC as required by the restrictions and that, even if they were, the Skeens had failed to complete construction by the due date stated in their application to the ACC.[1]

As to his requests for relief, Pfaff sought a declaratory judgment that the restrictions prohibited:

(a)     placing a previously constructed house on their property that has less than 800 square feet of living space;

(b)     placing a travel trailer on their lot to be used as a residence;

(c)     placing a travel trailer on their lot to be used as a temporary residence during construction for more than 90 days;

(d)     creating a noxious unsanitary condition on the property by not installing a septic system, thereby adversely affecting the rights, privileges, and well-being of other property owners in Canyon Lake Estates Subdivision.

---

[1] Pfaff also contended that, even if the signers were legally designated as ACC members, they acted arbitrarily and inconsistently with previous enforcement of the restrictions. Pfaff, however, did not file suit against the members so we do not address his claims against them.

3

Pfaff also sought a permanent injunction against the Skeens to enjoin them "from placing a manufactured structure or trailer" on their lot in violation of the restrictions and damages "due to decreased value [of Pfaff's property]" and "other expenses." The Skeens answered, generally denying Pfaff's allegations and requesting attorney's fees pursuant to the UDJA. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009.

In July 2010, the Skeens filed a motion for traditional and no-evidence summary judgment. Among their grounds, they contended that the evidence was conclusive that they were in compliance with the restrictions. They attached evidence to their motion to support their position that the house that they placed on their lot was of "frame construction" and that they had obtained approval from the ACC to place the house on their lot. Their evidence included: (i) an affidavit by the original builder of the house with attached photographs of its construction, (ii) an affidavit by Lynnsey Jones, a member of the ACC, with an attached copy of the ACC's approval of the Skeens' application to modify their property, (iii) a copy of the restrictions, (iv) an affidavit from Yvonne Skeen with attached copies of the "plans, schematics and permits" as to the placement and modification of the pre-constructed house on the lot, and (v) an affidavit from the Skeens' attorney concerning attorney's fees. The Skeens, alternatively, contended in their motion that there was no evidence that they had violated the restrictions.[2]

---

[2] Specifically, they contended that Pfaff could not bring forth any evidence to support the following elements of his claim for injunctive relief: (i) the Skeens had "committed a distinct or substantial breach of the restrictions," (ii) the Skeens were "in violation of noncompliance" with the restrictions, (iii) Pfaff "has suffered a decrease in the value of his property as the result of a violation of the deed restrictions," and (iv) there was "no basis to support an award of attorney's fees" to Pfaff. *See Jennings v. Bindseil*, 258 S.W.3d 190, 198 (Tex. App.—Austin 2008, no pet.) (to be entitled to injunction for violation of a restrictive covenant, plaintiff must show "a distinct or substantial

4

In August 2010, Pfaff filed a competing motion for partial summary judgment on his claims and attached evidence to his motion. He contended that he was entitled to summary judgment because the restrictions were not ambiguous and the evidence showed: (i) the house placed on the Skeens' lot did not have 800 square feet of living space, (ii) the individuals acting as the ACC were not properly appointed or authorized to act, (iii) construction of the house was not completed as required by the application to the ACC for construction, (iv) the Skeens did not own the lot when they applied to the ACC, (v) the house was placed on the lot prior to obtaining the ACC's written approval, (vi) the permit for installation of the septic system was void, (vii) the Skeens had placed a travel trailer on the property without proper plumbing connections, and (viii) the Skeens had placed an out-building on the property that was not designed to be a carport or garage as allowed by the restrictions. Pfaff's evidence included an affidavit by Pfaff with attached photographs of the pre-constructed house and the travel trailer and a copy of a document that was recorded in 1971 that showed that there had been a change in the members of the ACC at that time.

The parties also filed responses to the summary judgment motions with evidence, and Pfaff filed a reply to the Skeens' response. Pfaff's evidence included additional affidavits by Pfaff with attachments and an affidavit by his attorney. Pfaff's attorney opposed the Skeens' motion for attorney's fees and averred that "the amount claimed for defense of this case [was] excessive and unreasonable." The attachments to Pfaff's affidavits included photographs and reports by the Comal County Public Health Authority concerning the Skeens' lot and the travel trailer. The Skeens' evidence attached to their response included an additional affidavit by Yvonne Skeen with

breach" of the covenant at issue).

5

attachments. She averred concerning a "storage shed" on their lot, the progress of the septic system construction, and the ACC's approval of an extension of time to complete the improvements to their lot. Attached to her affidavit was a copy of the ACC's written approval of the extension until March 2011.

After a hearing in September 2010, the trial court rendered judgment in favor of the Skeens, granting their motion for traditional and no-evidence summary judgment and denying Pfaff's motion for partial summary judgment. The trial court also awarded the Skeens attorney's fees in the amount of $7,500.00, as well as attorney's fees in the event of an appeal. Pfaff filed a motion for new trial or alternative motion to modify judgment, which was overruled by operation of law. This appeal followed.

**ANALYSIS**

Pfaff raises four issues on appeal. Pfaff contends: (i) the trial court should not have denied Pfaff's motion for partial summary judgment because the restrictions are clear and unambiguous and the evidence supports Pfaff's claim that the Skeens violated the restrictions; (ii) the trial court should not have granted the Skeens' no-evidence motion because there is more than a scintilla of evidence to support Pfaff's claims under the UDJA and his claims for an injunction and damages; (iii) the trial court should not have granted the Skeens' traditional motion for summary judgment because their evidence along with Pfaff's evidence supports Pfaff's motion or, alternatively, the evidence raises genuine issues of material fact; and (iv) the trial court should not have granted the Skeens' traditional motion and awarded attorney's fees.

6

*Standard of Review*

We review a trial court's summary judgment rulings de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). To prevail on a traditional motion for summary judgment, the movant must show that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003). If the movant's motion and evidence establish a right to judgment as a matter of law, the burden shifts to the nonmovant to raise a genuine issue of material fact to defeat the summary judgment motion. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000).

Under the no-evidence standard, "[a]fter adequate time for discovery, a party without presenting summary judgment evidence may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial." Tex. R. Civ. P. 166a(i). "A no-evidence summary judgment is essentially a pretrial directed verdict, and we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex. 2003).

When reviewing a summary judgment, "[w]e review the evidence presented by the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005) and *Johnson*

7

*v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 208 (Tex. 2002)). We "consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented." *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007) (citing *Wal-Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 568 (Tex. 2006) and *City of Keller*, 168 S.W.3d at 822–24).

When both sides move for summary judgment and the trial court grants one motion and denies the other, we determine all questions presented and render the judgment the trial court should have rendered. *Dorsett*, 164 S.W.3d at 661. If the trial court's order does not specify the grounds for its summary judgment, "we must affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious." *Knott*, 128 S.W.3d at 216.

Pfaff's issues also address the construction of restrictive covenants. "Like other questions of law, we review a trial court's construction of restrictive covenants de novo." *Owens v. Ousey*, 241 S.W.3d 124, 129 (Tex. App.—Austin 2007, pet. denied). "[R]estrictive covenants are subject to the general rules of contract construction." *Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998). When a court concludes that contract language "'can be given a certain or definite legal meaning or interpretation,'" then the language "'is not ambiguous and the court will construe the contract as a matter of law.'" *SAS Inst., Inc. v. Breitenfeld*, 167 S.W.3d 840, 841 (Tex. 2005) (quoting *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)). "Contract terms are given their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense." *Dorsett*, 164 S.W.3d at 662.

8

***Summary Judgment Rulings***

In his first three issues on appeal, Pfaff urges that the trial court erred in its summary judgment rulings in favor of the Skeens because the evidence was conclusive as to his claims that the Skeens were in noncompliance with the restrictions or, alternatively, the evidence raised genuine issues of material fact concerning his claims. The dispositive issue then as to each alleged violation of the restrictions is whether the evidence raised genuine issues of material fact to preclude summary judgment or whether the evidence supported summary judgment for either side. We turn then to review the evidence as to each of the alleged violations of the restrictions.

*(i)      Restrictions (c) and (f)*

Pfaff contends that the Skeens' use of the travel trailer on their lot violated restrictions (c) and (f), which state:

(c)      No noxious or offensive trade or activity shall be carried on upon any of the property in said subdivision, nor shall anything be done thereon which is, may be or may become an annoyance or nuisance to any of the property owners in said subdivision.

. . .

(f)      No trailer, basement, tent, shack, garage, barn or other out building erected on any portion of the subdivision shall be used as a residence, except as provided below, nor shall any residence of temporary character be permitted. No temporary building shall be erected or maintained on any lot except during actual construction of a dwelling being erected thereon; and then such temporary building must be on the lot on which construction is in progress and not on any adjoining lot, street or easement. On completion of construction of the dwelling, the temporary building shall be removed, except that such building may be used as detached garages in connections with the dwellings. No temporary building or structure shall be used for residential during construction; provided that such temporary buildings may be used during construction for a period not exceeding 90 days.

9

As an initial matter, we conclude that restrictions (c) and (f) are not ambiguous as to the issues before us and interpret them as a matter of law. *See SAS Inst., Inc.*, 167 S.W.3d at 841; *Emmons*, 966 S.W.2d at 478. The evidence also was undisputed that the Skeens placed and used the travel trailer on their lot during construction. The evidence included pictures of the trailer and its location next to the pre-constructed house on the lot. The issue then is whether the Skeens' use of the trailer on their lot during construction violated restrictions (c) and/or (f).

Pfaff argues that the use of the trailer violated restriction (c) because the evidence showed that it did not have a proper connection to a septic system or plumbing. In his affidavit dated August 14, 2010, Pfaff averred:

> The Skeens now have a travel trailer beside the house. Even though we have the water meter and service to that property, there is no plumbing connecting the water supply to the house. Instead they have a garden hose connected to the water line into the travel trailer and use the bathroom facilities inside the trailer. . . .
>
> The Skeens applied for a permit to install a septic system. The permit . . . was issued on November 9, 2009. . . . However, if construction was not commenced within 180 days from the date of issuance, the permit became void. . . . As of the date of this affidavit no septic system has been installed. I personally know that the Comal County Health Department has warned them about dumping sewage and "black water" from the trailer onto the ground.

Pfaff also presented copies of "septic complaint[s]" and a "Notice of Public Health Nuisance" by the Comal County Public Health Authority as to the Skeens' lot that showed that a violation was issued in February 2010 for "sewage discharge on the ground."

The Skeens presented contradictory evidence as to the alleged violation of restriction (c). Their evidence showed that they were in the process of installing a septic system on

their property, that the process had been slowed down because of this ongoing case, and that the ACC had granted them an extension until March 2011 to complete construction.[3] Other documentary evidence also showed that the case by the health authority was closed in May 2010 after a determination that there had been "[n]o discharge" from the main structure or trailer and that the health authority inspected the Skeens' property again in June 2010 and found no discharge. Given the conflicting evidence presented by the parties, we conclude that there are genuine issues of material fact as to whether the Skeens' use of the travel trailer was a "noxious or offensive . . . activity" or "an annoyance or nuisance" to the other property owners.

As to restriction (f), its plain language prohibits a "trailer" from being used as a "residence." Restriction (f) also provides an exception to this prohibition by expressly allowing temporary buildings or structures during construction "for a period not exceeding 90 days." Pfaff averred that the Skeens were using the bathroom facilities in the travel trailer during construction, and other evidence supported a reasonable inference that the travel trailer was on the property for a time period exceeding 90 days during the period of construction. This evidence raises genuine issues of material fact as to whether the Skeens were using the travel trailer as a "residence" and, if so, whether they improperly exceeded the 90-day time period during construction for doing so.

---

[3] The ACC document granting the extension stated the reason for the approval:

Skeens have been unable to complete work on home due to pending lawsuit filed by Fred Pfaff. They have been directed by their attorney NOT to complete improvements until the lawsuit has been resolved. We feel this is a legit reason for not being able to complete the construction and improvements.

11

Given the conflicting evidence presented by the parties, we conclude that "reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented" as to whether the Skeens' use of the travel trailer on their lot was in compliance with restrictions (c) and (f). *See Mayes*, 236 S.W.3d at 755. We, therefore, conclude that the trial court erred by granting summary judgment in favor of the Skeens and that it did not err by denying Pfaff's competing motion for summary judgment as to the alleged violations concerning the travel trailer.

### *(ii)*     *Restriction (d)*

Pfaff points to evidence that the pre-constructed house was less than 800 square feet at the time that it was placed on the Skeens' property to support his claim that the Skeens were in noncompliance with the restrictions. Restriction (d), the minimum square footage provision, states:

> (d)     No lot shall be re-subdivided into, nor shall any dwelling be erected or placed on any lot having a width of less than 26 feet; nor shall any dwelling be erected in said subdivision containing a dwelling area of less than 800 square feet, exclusive of porches and garages.

As an initial matter, we conclude that restriction (d) is not ambiguous as to the issues before us and interpret it as a matter of law. *See SAS Inst., Inc.*, 167 S.W.3d at 841; *Emmons*, 966 S.W.2d at 478. The evidence also was undisputed that the size of the pre-constructed house was less than 800 square feet at the time that it was placed on the Skeens' lot. The issue then is whether the size of the pre-constructed house when it was initially placed on the lot raises a fact issue or establishes that the Skeens were in noncompliance with restriction (d).

The Skeens' evidence showed that the ACC was aware that the pre-constructed house was below the minimum square footage when it approved the placement of the house on the lot and that it approved the Skeens' plans to modify the house and to make other improvements to their lot at the same time. The evidence also was undisputed that the Skeens had been granted an extension until March 2011 to complete the modification and other improvements, and the evidence included the Skeens' plans to increase the size of the house so that it would have a dwelling area of more than 800 square feet. The ACC document approving the modification also expressly references the Skeens' plans. At the time of the summary judgment hearing—September 2010—the Skeens established that they still had time to complete the improvements to their property consistent with restriction (d) and the ACC's extension of time. The Skeens' evidence was undisputed in this regard, and we accordingly conclude that at the time of the hearing, Pfaff failed to present evidence that raised a genuine issue of material fact as to whether the Skeens were in noncompliance with restriction (d). *See Knott*, 128 S.W.3d at 215–16; *Willrich*, 28 S.W.3d at 23. The trial court did not err by granting summary judgment in the Skeens' favor and denying Pfaff's competing motion as to the alleged violation of restriction (d).

### (iii) Restrictions (j)

Pfaff argues that the Skeens were in noncompliance with restriction (j) because there was no evidence that the Skeens added or intended to apply two coats of paint to the pre-constructed house and there was a fact issue as to the identification of the house—whether the house was the same house that was referenced in the affidavit by the builder. Pfaff asserts that there are discrepancies in the pictures of the house. Restriction (j) states:

(j)     No building of frame construction on the exterior shall be constructed in the subdivision unless it, or immediately following construction, receives at least two coats of paint.

Pfaff did not raise an alleged violation based upon restriction (j) in response to the Skeens' motion for summary judgment or in his motion for summary judgment. We, therefore, may not consider restriction (j) on appeal as a ground to reverse the trial court's summary judgment rulings in favor of the Skeens. *See* Tex. R. Civ. P. 166a(c) (providing that issues not raised "by written motion, answer or other response shall not be considered on appeal as grounds for reversal"); *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341, 343 (Tex. 1993); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979).

### (iv)     Restriction (n)

Pfaff finally contends that the Skeens were in noncompliance with the restrictions because they failed to submit the proper plans and specifications to the ACC or to obtain written approval prior to placing the pre-constructed house on the lot and that the signers of the application had no authority to sign such document. Restriction (n), the restriction addressing the ACC and its authority, states:

(n)     No building shall be erected, placed or altered on any lot until the construction plans and specifications, and a plan showing the location of the structure, have been approved by the architectural control committee as to quality of workmanship and materials, as to compliance with these restrictions and as to location with respect to topography and finish grade elevation. The architectural control committee shall be composed of S. M. Fuller, Ernest A. Knipp and Mayes E. Fuller, and a majority of the committee may designate a representative to act for it. In the event of death, resignation or inability to act of any member of the committee, the remaining members shall

14

have full authority to designate a successor. . . . After 50% of the lots in said subdivision have been sold, the then record owners of a majority of the lots shall have the power to change the membership of the committee or its powers and duties. Evidence of the determination of any such changes shall be by written instrument recorded in the Deed Records and signed by a majority of the then record owners of lots. The committee's approval or disapproval shall be in writing and shall be made promptly after submission of plans and specifications by the applicant.[4]

As an initial matter, we conclude as we have as to the other restrictions at issue that restriction (n) is not ambiguous as to the issues before us and interpret it as a matter of law. *See SAS Inst., Inc.*, 167 S.W.3d at 841; *Emmons*, 966 S.W.2d at 478. The evidence also established that the Skeens submitted plans and obtained approval from the ACC in accordance with this restriction. The Skeens presented the affidavit of Lynnsey Jones, one of the members of the ACC. She averred that she was a member of the ACC and that the permit granted to the Skeens, which was attached to her affidavit, "was given . . . by the members of our committee who are charged with granting such permits." The evidence established that the members of the ACC approved the Skeens' plans as well as their request to extend the deadline to complete the improvements to their lot until March 2011. Given this evidence, we conclude that Skeens established that they were in compliance with restriction (n). The burden then shifted to Pfaff to present evidence that raised a genuine issue of

---

[4] Although Pfaff references this restriction as restriction (o) in his briefing, we construe his argument as addressing restriction (n). Restriction (n) also includes a sentence that plans that are submitted to the ACC without an action being taken on them within 30 days do not require approval. The Skeens contend, alternatively, that, if the ACC members who approved the Skeens' plans were not authorized to do so, the Skeens did not require approval from the ACC under this provision because they submitted their plans to the only existing ACC for the subdivision. Because we conclude that the evidence conclusively established that they were in compliance with restriction (n), we do not address their alternative argument. *See* Tex. R. App. P. 47.1.

15

material fact to defeat summary judgment as to his claim that the Skeens were in noncompliance with restriction (n). *See Willrich*, 28 S.W.3d at 23.

Pfaff points to documentary evidence that showed one change of the ACC members that was recorded in 1971 and the evidence that the ACC did not approve the modifications to the lot in writing prior to the pre-constructed house being placed on the lot. The plain language of restriction (n), however, did not require the ACC's written approval prior to placing the house on the lot. The restriction does not distinguish between written and verbal approval. Here the evidence conclusively showed that the Skeens obtained verbal approval from the ACC before placing the house on the lot.

As to Pfaff's challenge to the ACC member's authority, the change in the ACC members that was recorded in 1971 similarly does not create a genuine issue of material fact. Pfaff relies upon the sentence in restriction (n) that states: "Evidence of the determination of any such changes shall be by written instrument recorded in the Deed Records and signed by a majority of the then record owners of the lot." Taken in context, however, this sentence refers to a change of ACC membership by the "record owners of a majority of the lots." There was no evidence presented that the record owners of a majority of the lots changed the membership of the ACC. Restriction (n) expressly allows ACC members to designate successors without involvement by the lot owners and does not require recordation when the change is by the members' designation. The plain language of restriction (n) then does not support Pfaff's position that the ACC members who signed the approvals were not authorized to do so.

We conclude that the Skeens' evidence established that they were in compliance with restriction (n) and that Pfaff did not present evidence to raise a genuine issue of material fact to

16

preclude summary judgment as to this restriction. *See Knott*, 128 S.W.3d at 215–16; *Willrich*, 28 S.W.3d at 23. The trial court, therefore, did not err by granting summary judgment in the Skeens' favor as to restriction (n).

### (v)  Conclusion

In conclusion, we sustain Pfaff's first, second, and third issues to the extent that Pfaff contends that there are genuine issues of material fact as to whether the Skeens violated restriction (c) and (f) by using the travel trailer on their lot during construction.[5] We otherwise overrule Pfaff's first three issues challenging the summary judgment rulings in favor of the Skeens as to his claims.

### *Attorney's Fees*

As part of his fourth issue, Pfaff contends that the trial court erred by awarding attorney's fees to the Skeens because the evidence showed that the Skeens were in violation of

---

[5] In his amended petition, Pfaff asserted that the Skeens had failed to comply with the restrictions because they "placed out-buildings or used shacks on the property to contend that these structures constitute part of the required square footage for a residence." In his motion for summary judgment, he similarly asserted that the "Skeens have placed an out-building on the property that is not designed to be a carport or garage as allowed by the restrictions." Pfaff does not address this alleged violation on appeal and, therefore, we need not address it. *See* Tex. R. App. P. 38.1(f), (i); *Davis v. West*, 317 S.W.3d 301, 306 n.1 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (issue on appeal relating to error in summary judgment waived if not raised and briefed on appeal). In any event, Yvonne Skeen averred in one of her affidavits that the complained-of "storage shed" was in compliance with the restrictions because it was at least five feet from the property line. Her position conforms with restriction (i), which states:

(i)  No garage . . . or other out building of any kind shall be erected on any lot nearer than five feet from either side property line. . . .

17

specific restrictions and Pfaff presented a controverting affidavit by his attorney raising a genuine issue of material fact as to the reasonableness of the Skeens' attorney's fees.

"In any proceeding under [the UDJA], the court may award costs and reasonable and necessary attorney's fees as are equitable and just." Tex. Civ. Prac. & Rem. Code Ann. § 37.009. We review a trial court's award of attorney's fees in an UDJA action under an abuse of discretion standard. *See Bocquet v. Herring*, 972 S.W.2d 19, 20–21 (Tex. 1998). A trial court abuses its discretion when it acts unreasonably or in an arbitrary manner or without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

Whether attorney's fees are reasonable and necessary are issues of fact to be determined by the factfinder. *Bocquet*, 972 S.W.2d at 21. As part of their summary judgment evidence, the Skeens presented an affidavit by their attorney to support an award of attorney's fees under the UDJA. Their attorney averred that: (i) he was hired to defend the Skeens in a lawsuit initially filed by Pfaff in county court, (ii) Pfaff nonsuited that case and filed this one, and (iii) the attorney generated 20 hours of legal work in the initial case and 10 hours in this case. He also set forth his qualifications and opined that "a rate of $250.00 per hour is fair and reasonable for this case," that "the sum of $5,000.00 would be fair and reasonable" to defend an appeal to the court of appeals, and "the sum of $5,000 would be fair and reasonable" to defend an appeal to the supreme court. Yvonne Skeen also averred that she had agreed to pay her attorney $7,500 to defend her and her husband from this lawsuit.

In response, Pfaff presented a controverting affidavit by his attorney as to the reasonableness of attorney's fees. Pfaff's attorney set forth his qualifications and averred in part:

18

Based upon my experience as a litigation attorney in this area of compliance with restrictions in a platted subdivision in Comal County, it is my opinion that the amount claimed for defense of this case is excessive and unreasonable. The issues in this case are primarily factual. The legal issues involve interpretation of restrictions according to elementary contract law, with well established precedents that require a minimum of research time. The number of witnesses is limited.

. . .

[The Skeens' attorney] seeks to recover fees for twenty hours of legal work for his defense filed in the original filing of this case in the Comal County Court at Law. However, that case [was] dismissed by non-suit. Neither the answer nor any other pleadings filed by [the Skeens' attorney] in the County Court at Law allege a counterclaim or requests attorney fees. . . . Defendants waived any right to recover attorney fees in the action in County Court.

Pfaff's attorney further opined that "a rate of $175.00 per [hour] is reasonable" and that "the generally accepted fee for appeal to the Court of Appeals is approximately $3,500.00 to $5,000.00 and $2,000.00 to $3,500.00 for petition for review to the Texas Supreme Court."

Because the parties presented controverting affidavits as to the Skeens' attorney's fees, we conclude that the evidence raised a genuine issue of material fact as to the reasonableness of the attorney's fee award. *See Willrich*, 28 S.W.3d at 23; *Bocquet*, 972 S.W.2d at 21. Further, there are genuine issues of material fact as to whether the Skeens' use of the travel trailer on their lot complied with the restrictions. We therefore conclude that the trial court erred by awarding attorney's fees to the Skeens as part of its summary judgment rulings. *See* Tex. R. Civ. P. 166a(c); *Knott*, 128 S.W.3d at 215–16. We sustain Pfaff's fourth issue to the extent it challenges the award of attorney's fees to the Skeens.

**CONCLUSION**

For the reasons stated above, we affirm the trial court's judgment in part and reverse and remand in part. We affirm the trial court's summary judgment in favor of the Skeens except as to whether the Skeens' use of a travel trailer on their lot complied with the restrictions and as to the award of attorney's fees to the Skeens. We reverse those portions of the judgment and remand the case to the trial court for further proceedings consistent with this opinion.

_____

Melissa Goodwin, Justice

Before Chief Justice Jones, Justices Henson and Goodwin

Affirmed in part; Reversed and Remanded in Part

Filed: October 23, 2012